# UNITED STATES *v.* L. P. & J. A. SMITH.

APPEAL FROM THE COURT OF CLAIMS.

No. 253. Argued March 22, 23, 1921.—Decided April 11, 1921.

1. In the performance of a contract with the United States for the excavation of a channel to specified depths, under attached specifications describing the materials to be removed as clay, sand, gravel, and boulders in unknown proportions, deposits consisting largely of limestone were encountered, the removal of which entailed an expense per cubic yard much exceeding the price fixed by the con-

tract for the materials therein specified. The engineer officer in charge of the work arbitrarily classified these deposits with the materials described by the specifications; ignored the protest of the contractors and their request that a new price be fixed therefor; and required them to proceed, under threats that, otherwise, they would be declared in default and the work taken from them and completed and the cost recouped from the retained percentages of their pay already earned and through legal proceedings against themselves and their sureties. *Held*, that clauses in the contract making decisions of the officer as to quantity and quality of work final, requiring the contractors to observe his instructions and denying any claim for modification of the work not agreed to, or expressly required, in writing,—were inapplicable, and that the contractors were entitled to recover from the United States the cost of excavating the material not covered by the contract. P. 15.

2. Contractors with the United States *held* entitled to recover the amount of a loss due to delays of the engineer in charge in locating the places where they should work. P. 17.

54 Ct. Clms. 119, affirmed.

APPEAL from a judgment against the United States for loss suffered by contractors in performing work not covered by their contract, under the arbitrary exaction of the official in charge, and for loss due to his delay in locating the places where work was to be done. The facts are stated in the opinion.

*Mr. Assistant Attorney General Davis*, with whom *Mr. Wilfred Hearn*, Special Assistant to the Attorney General, was on the briefs, for the United States.

The provisions of the contract and specifications relied on chiefly by the United States were as follows:

"The decision of the engineer officer in charge as to quality and quantity shall be final."

"The order of the work will be determined by the U. S. agent in charge, and his instructions shall be observed by the contractor and his employees."

"In case of differences arising between the U. S. agent in charge and the contractor in regard to the work or to

the specifications, appeal may be made to the engineer officer in charge."

"The material to be removed consists of clay, sand, gravel, and boulders, all in unknown proportions."

"No claim whatever shall at any time be made upon the United States by the party or parties of the second part for or on account of any extra work or material performed or furnished, or alleged to have been performed or furnished, under or by virtue of this contract, and not expressly bargained for and specifically included therein, unless such extra work or materials shall have been expressly required in writing by the party of the first part or his successor, the prices and quantities thereof having been first agreed upon by the contracting parties and approved by the Chief of Engineers."

The propositions advanced in argument were:

The work was not work provided for or required by the terms of the contract, but extra and outside of the contract.

No obligation to pay for extra work was created, because the provisions of the contract relating to the procurement of, and the payment for, extra work were not complied with, and there was not a waiver of such provisions.

There was no breach of warranty by the United States relating to a matter material and necessary to the performance of the contract.

The petition does not allege, neither has the court found, that bad faith on the part of an officer of the United States, in the exercise of the powers conferred upon such officer, produced the injury of which claimants complain.

The recovery for lost time was not justifiable. The officer in charge was entitled to a reasonable time to locate the places where dredging was to be done, and

the court below has not found that the delay was unreasonable or actuated by bad faith or fraud.

*Mr. John E. Morley*, with whom *Mr. Rufus S. Day* and *Mr. Roscoe M. Ewing* were on the brief, for appellees.

Mr. Justice McKenna delivered the opinion of the court.

April 14, 1919, the Court of Claims rendered a judgment against the United States in favor of L. P. & J. A. Smith (appellees, and we shall so refer to them) for the sum of $119,304.27. To review that judgment this appeal is prosecuted.

The appellees were a partnership doing business at the times herein stated under the firm name of L. P. and J. A. Smith.

In response to an advertisement and after the submission of proposals for work at the mouth of the Detroit River, a contract in writing was entered into December 31, 1892, by O. M. Poe, Colonel, Corps of Engineers, U. S. Army, and appellees, by which the latter agreed to excavate a ship channel 20 and 21 feet deep, located in section 8 of the Detroit River, in accordance with specifications attached to the contract and made a part thereof. They were to receive in full compensation for their work the sum of 18 cents per cubic yard of excavation, scow measure.

The material to be removed was specified to consist "of clay, sand, gravel, and boulders, all in unknown proportions."

In the season of 1894 there was discovered a natural bed of limestone rock within the boundaries of the excavation called for by the contract, which was not provided for by the contract. For the removal of this limestone the United States advertised for bids.

The L. P. & J. A. Smith Company, a corporation of Ohio, and a successor in interest to L. P. and J. A. Smith, bid on the work. The bid was accepted and a contract was entered into November 9, 1894, by which that company agreed to remove the rock and other material at the price of $2.24 per cubic yard of excavation, bank measure. The contract was completed on or about June 16, 1895.

The contract of December 31, 1892, was extended from time to time by Col. Lydecker, the engineer in charge of the work, he having succeeded Colonel Poe, to July 1, 1897. In that year he ordered appellees to work at particular spots toward the northerly end of section 8, at certain designated shoals which had been excavated under the contract of November 9, 1894, with the L. P. & J. A. Smith Company.

And certain other officers, one an assistant engineer, another a sub-inspector, in charge of the work, insisted upon locating for appellees the points where dredging was to be done.[1]

The material or a large part of the material to be removed from those points was limestone rock or limestone bed rock. Appellees protested and asked for the fixing of an extra price for doing the work. This was refused and they were told that if they did not remove the same they would be declared defaulting contractors; that the work would be taken from them, done and charged to them, and be paid for from the retained percentages for work already performed, and, if the percentages were not sufficient for that purpose, they, appellees, and their bondsmen, would be proceeded against. No other officer or officers so told appellees or insisted that all the material to be removed was clay, sand, gravel, and boulders.[1]

A large part of the material, arbitrarily stated to be clay, gravel, sand and boulders, was in fact limestone

---

[1] Additional finding upon the mandate of this court.

rock and limestone bed rock, and was not the material specified in the contract.

The quantity of material excavated as thus required, and that required by the contract, the findings estimate in detail and the cost of its excavation, in the sum of $116,760.61, from which was deducted the sum of $5,174.64 that had been paid appellees, leaving due to them $111,-585.97. It is found besides that delays caused by the engineer in charge resulted in a loss to the appellees of $7,718.30. For these two sums judgment was rendered.

The Court of Claims in a brief memorandum summarized the elements of liability against the United States, concluding as follows: "We think the right of plaintiffs [the appellees] to recover the price for the work done by them is indisputable."

The United States adduces against the conclusion certain provisions of the specifications, the latter being, as we have seen, part of the contract.

They are too long to quote or even summarize. They are to the effect that the decision of the engineer officer in charge as to quality and quantity of work was final and that his instructions were required to be observed by the contractor. And further that modifications of the work in character and quality, whether of labor or material, were to be agreed to in writing and unless so agreed to or expressly required in writing no claim should be made therefor.

The contention overlooks the view of the contract entertained by Colonel Lydecker and the uselessness of soliciting or expecting any change by him. His conduct, to use counsel's description, "though perhaps without malice or bad faith in the tortious sense," was repellent of appeal or of any alternative but submission with its consequences. And we think, against the explicit declaration of the contract of the material to be excavated and its price. The contract provided, in response to advertise-

11.                    Opinion of the Court.

ments and in fulfillment of bids, for the excavation of a ship channel 20 and 21 feet deep and that "the material to be removed consists of clay, sand, gravel, and boulders, · all in unknown proportions." To these explicit provisions and their contractual force we may add the judgment and conduct of Colonel Poe, the first engineer officer in charge of the work. He realized immediately when a bed of limestone rock was encountered it was not the material stated in the contract, and without hesitation entered into another contract concerning it, and at a price of significant contrast—18 cents per cubic yard, scow measure, being the price of the first contract, $2.24 per cubic yard of excavation, bank measure, being the price of the second contract.

We think the case is within the principle of *Hollerbach* v. *United States*, 233 U. S. 165; *Christie* v. *United States*, 237 U. S. 234; *United States* v. *Spearin*, 248 U. S. 132, and *United States* v. *Atlantic Dredging Co.*, 253 U. S. 1.

We concur, therefore, with the declaration of the Court of Claims that "the right " of the appellees "to recover the price for the work done by them is indisputable," including the loss to them while waiting for the engineer "to locate their work."

*Judgment affirmed.*

MR. JUSTICE DAY and MR. JUSTICE MCREYNOLDS took no part in the decision.