## MANEY et al. v. OKLAHOMA CITY.

No. 19224.  Opinion Filed May 12, 1931.

Rehearing Denied June 30, 1931.

E. L. Fulton and Twyford & Smith, for plaintiffs in error.

M. W. McKenzie, A. L. Hull, and Bliss Kelly, for defendant in error.

CLARK, V. C. J. This action was commenced in the district court of Oklahoma county by plaintiffs in error against defendants in error to recover a money judgment. The controversy grew out of a contract entered into between plaintiffs and defendant wherein plaintiffs were to excavate a bypass for the defendant city. For convenience the parties will be referred to as they appeared in the trial court.

Plaintiffs in their petition alleged:

That the bid was based upon maps, drawings, plans, and specifications and sounding sheet and profile, showing the nature and character of the work to be done, and particularly the character of the material to be excavated, which had been prepared and made by the defendant city. That the maps, drawings, plans, specifications, and the sounding sheet (which was made from borings made by defendant city) disclosed the material to be excavated consisted entirely of earth and dirt except a small and negligible quantity of rock at one particular point; that the said maps, drawings, plans, specifications, and sounding sheet, together with the representations made by the city engineer, were relied upon by the plaintiffs in the preparation of their bids and in entering into said contract. That plaintiffs did not have sufficient length of time between the advertisement for bids and the letting of the contract to make their own soundings, but relied upon the representations of the defendant city as to the character of material to be encountered. That in the progress of the work it developed that instead of the material to be excavated being earth and dirt excepting a negligible quantity of rock, a very large portion thereof was rock, to wit, about 74,000 cubic yards. That the defendant city, its engineers, and commissioners were immediately notified, who viewed the rock, and directed plaintiffs to proceed with said work under their contract, and all formal claims and notices prescribed in the specifications were waived by said city engineer and city commissioners. That plaintiffs completed their work to the satisfac-

tion and written acceptance of the defendant city. That the contract price for earth and dirt excavation was wholly inadequate for excavation and removal of said solid rock; and that the fair and reasonable cost and expense of excavating and removing said rock was $1.40 per cubic yard. And plaintiff prayed for judgment against the city for $1.40 per cubic yard for the excavation and removal of said rock, and for such other and further relief as under the law and facts the plaintiff was entitled.

Defendant city filed its answer, which consisted of a general denial of all material allegations of plaintiffs' petition except what were specifically admitted, as follows:

"1. Admitted the status of the parties.

"2. Admitted the execution of the contract, and that it undertook to construct an improved water system.

"3. Admitted it 'was necessary to construct a by-pass.

"4 Admitted it caused maps and drawings to be made and showing that borings and soundings had been made by it to ascertain the character of the material to be excavated.

"5. Admitted that such borings and soundings disclosed that the material to be excavated consisted of a quantity of earth and dirt with a small quantity of rock.

"6. Admitted plaintiffs completed to the satisfaction and written acceptance of the city and its engineer the work."

The cause was tried to a jury and resulted in a verdict for the defendant. Motion for new trial was filed and overruled. Plaintiffs brought the cause here for review.

The first proposition presented by the plaintiffs is as follows:

"Under the undisputed evidence the plaintiffs were entitled to a directed verdict holding the city liable for the rock excavation in question. The only question to be submitted to the jury was the reasonable cost thereof."

At the close of the trial the plaintiffs requested the following instruction:

"You are hereby instructed that the plaintiffs and defendant have stipulated that the actual amount of rock excavated by the plaintiffs for which they have not been paid amounts to 60,000 cubic yards. In this connection you are further instructed that the only question for you to determine is the reasonable value of such excavation at the time the same was performed, less the sum of 16c per cubic yard"

—which was refused by the court and exceptions allowed.

The undisputed facts in the case show:

That the defendant in error, in contemplation of construction of its improvements to its water supply system, had maps, plans, profiles, and specifications prepared by its engineers, as well as soundings made to ascertain the character of material that was supposed to be in the by-pass, and that said soundings showed very small amount of rock not exceeding 407 cubic yards, which would be a negligible quantity of rock, taking into consideration the entire project. The soundings were transferred onto a blue print and kept in the commissioner's and engineer's office. The prospective bidders secured copies of the plans and specifications, drawings and profiles from the city clerk's office, and also saw and used a sounding sheet and profile showing soundings which were in the city engineer's office and showed the character of the material to be encountered in the by-pass; that said sounding sheet showed only negligible or very small quantity of rock. Plaintiffs used the plans, drawings, specifications, profiles prepared by the defendant city, together with the sounding sheet, and the information furnished by the city engineer in the preparation and submission of their bid. Plaintiffs were shown the sounding sheet by the said city engineer and were advised by the city engineer there was a very negligible quantity of rock. That' the bid and contract were made and entered into for the excavation of earth and dirt and not solid rock, except the very small quantity as shown on the sounding sheet. The term "earth" and expression "earth excavation," as used in such contracts, mean earth only, and that there was no rock or anything else except earth. The bidders did not have sufficient length of time to make their independent soundings, and had to rely on the maps, drawings, profiles, and sounding sheet and the information furnished by the city engineer as to the character of the material to be encountered. That plaintiffs were the successful bidders and entered into the contract for the construction of section "B" of the project, being the "by-pass," at the price of 16c per cubic yard, subject to the provisions in the contract and specifications. That plaintiffs fully performed the contract, and that the work was completed and accepted by the defendant city and plaintiffs received compensation therefor at the contract price of 16c per cubic yard for earth excavation, but did not receive compensation for the extra work of rock excavation.

It was stipulated at the trial below that the plaintiffs excavated 60,000 cubic yards of rock from said by-pass. That after the work had progressed for sometime a change

was made in the line of the by-pass from that originally staked out. That in the progress of the work plaintiffs encountered large quantities of rock; that they notified the city engineer and also the city commissioners at a session of the commissioners; that the commissioners, in a body, went out to the by-pass and viewed the rock. That the matter was taken under advisement. Plaintiffs were instructed to proceed with the work and hurry same to completion. That the city engineer was instructed to keep track of the quantity of rock excavated and did so. That the city engineer who had charge of the preliminary work and at the time of the advertisement for bids and letting of the contract and during the construction of the work until nearly completed died. That the material to be encountered in the by-pass was not classified; but understood by the contractors, prospective bidders, and particularly the plaintiffs and the city engineer, that there was only a very small quantity of rock; that the large quantity of rock encountered was a surprise to the plaintiffs, city engineer, and city commissioners. That the plaintiffs bid and contracted for earth excavation except rock in an insignificant quantity as shown on the profile.

The contract entered into between the parties provides, in part, as follows:

"The said contractors hereby agree * * * to do and complete the work * * * and in accordance to the plans and specifications for said work and improvements adopted and approved and on file in the office of the city clerk * * * a copy of the general specifications * * * and copy of the special specifications for section— * * * and hereto attached and made a part hereof, and all of the provisions, conditions and convenants therein contained are made a part of this contract. * * * The contractor shall receive as full compensation therefor, the sum of 16c per cubic yard for all excavation, subject to such deductions and additions as may be allowed as herein provided. * * *"

The special specifications for by-pass excavation provide:

"Meaning and Intent: The work herein specified is to be executed in all its parts in a thoroughly substantial and workmanlike manner in full accordance with the intent of the plans and these specifications and everything necessary for the completion of the work shall be furnished and done in a proper manner, even though not particularly specified or shown on the plans."

"Earth Excavation: The contract price will cover the excavation of all earth of whatsoever nature down to the grades and lines as shown on the plans. * * *"

"Classification: There shall be no classification of excavated material as far as unit costs are concerned, but there shall be a classification as to the material used and the disposition thereof in the embankment. *, * * The material used in the embankment shall be placed according to the directions of the engineer."

The general specifications provide:

"The estimated quantities, where given, in the proposal schedules are not intended nor are they to be considered by the contractor, as the actual quantities that may be required for the completion of the work, and the city does not expressly, or by implication, agree that the amount of work will correspond thereto, and it reserves the right to increase or decrease the amount of any class or portion of the work as may be deemed necessary by the engineer. The estimated quantities will be treated as final quantities only for the purpose of making comparisons of bids. Any increase or decrease these quantities will be paid for or deducted in accordance with unit prices bid as schedule agreed upon."

Under this last provision the subdivision "Classification" in the special specifications shows there was no classification of excavated material as far as unit costs were concerned; but the contract was let under one unit designated as "Earth Excavation," as follows:

"The contract price will cover the excavation of all earth of whatsoever nature. * * *"

Under the evidence adduced, which was undisputed, this did not include rock, and that it was understood by the plaintiffs and represented by the maps, drawings, profiles, and sounding sheet and the representations made by the city engineer that there was no rock except in negligible quantity which was not necessary to take into consideration.

The contract further provided:

"The contract to cover the work to be done will be based upon these general provisions, the detailed specifications of the work, and the plans or other papers to which such detailed specifications refer, all of which will be attached to and form a part of the contract.

"Definitions: Wherever the word 'engineer' is used in these specifications, it shall be understood to mean the supervising engineer representing the city on this work, or its authorized resident engineer."

"Wherever the words 'approved or approval' are used in these specifications they shall be understood to mean the approval of the engineer."

"Control of Work: The engineer shall at all times exercise full supervision and gen-

eral direction of all work under the contracts as far as it affects the interests of the city, and all questions, disputes or differences as to any part or detail thereof shall be decided by the engineer subject to appeal to the board of commissioners, provided that it shall be distinctly understood that the supervision and general direction of all work under the contracts' by the engineer shall not relieve the contractor of responsibility for the full protection of and responsibility for his work, both as regards sufficiency and time of execution. The engineer shall in all cases determine the amount, equality, acceptability and fitness of the several kinds of work and materials which are to be paid for hereunder."

The contractor was required to conform with the lines and grades given by the engineer, as shown by the general conditions made a part of the contract, as follows:

"Plans, Profiles and Specifications: The work, during its progress must conform with the lines and grades given by the engineer and must be done in conformity with the plans and specifications and in accordance with the directions given by the engineer from time to time, subject to such modifications and conditions as shall be deemed necessary during the progress of the work; and in no case shall any work in excess of requirements of the plans to be paid for unless ordered in writing by the engineer. The drawings may be general and may be supplemented from time to time by further detailed drawings of structures herein referred to."

The decision of the city engineer was final and conclusive as to interpretation placed on the plans and specifications.

"Discrepancies: The specifications and plans forming part of the contract shall be considered as supplementary one to the other, so that materials and workmanship indicated, called for, or implied by the one and not by the other shall be supplied and worked into place the same as though specifically called for by both. Should any portions of the plans and specifications be obscure or in dispute they shall be referred to the engineer, who shall decide as to the true meaning and intent, and his decision shall be final and conclusive."

"Estimated Quantities and Changes: * * * Should the city, through the engineer, deem it necessary to modify the location, grade, number of size of structures, and appurtenances, it reserves to itself the right to do so and the contractor shall accept such modifications so ordered in writing by the engineer. These modifications shall not vitiate the contract. When any such changes are made, the contractor shall receive equitable compensation to be determined by the engineer. * * * Where such modifications call for an increase in the cost of the work said in-

crease shall be added to the amount due to the contractor. All orders given by the engineer to the contractor involving increased expenditures of money or extension of time beyond those mentioned in the specifications shall be approved by the commission in writing and unless such approval is obtained, such order shall not be binding upon the city. The contractor bases his bid upon his own estimates and judgment in regard to both quantity and character of materials."

The line of the by-pass was changed by the defendant city, under the evidence, some 200 feet.

Under the undisputed evidence, the excavation of rock was not taken into consideration in the submission of bids and making of the contract, and only earth excavation was taken into consideration; and it was worth considerably more to excavate rock than it was to excavate earth and dirt. The plans, profiles, and sounding sheet showed a negligible quantity of rock in the entire by-pass project and no classification of rock was made. The general conditions, which are a part of the contract, provide for extra work as follows:

"Extra work: No extra work will be paid, for or allowed unless the same was done upon the written order of the engineer. The contract price shall cover all expenses, of whatever nature of description, connected with the work to be done under the contract. Should the contractor at any time consider that he is being required to furnish any material or labor not called for by the contract, a written itemized claim for compensation therefor must be submitted by him to the engineer for decision. The failure or neglect of the contractor to present, as above, his claim for material or labor alleged to be extra, within twenty (20) days after being required to furnish or perform the same, shall be deemed and construed as a waiver of all claim and right to additional compensation for the furnishing or performance of the alleged material or labor. If, at any time during the progress of the work or before the final estimate is rendered, it shall be discovered that some particular class of work, which should have properly come within the bounds of the contract, has not been bid upon, and therefore, no definite price fixed for the doing thereof, the engineer and the contractor shall jointly fix a price for such work, and shall file with the city clerk a signed statement or report of the price fixed, which shall be attached by the city clerk to the contract therefor and become a part thereof, and the price so fixed shall be equally binding, and have like effect, as if actually bid upon by the contractor when making his bid for the other portions of the work. In no case shall the engineer, without the written consent of the commission, so change the plans or specifications as to

increase the quantities or cost, nor shall he give orders for the expenditures of additional money, nor allowance of damages nor the extension of time beyond the terms of the contract, without such written consent."

This large quantity of solid rock, being as agreed upon, as 60,000 cubic yards, under the undisputed evidence in this case, was not contemplated nor contracted for, and under the above provision of the contract should be treated as extra work. The city, through its officers, had prepared maps, profiles, plans and specifications, and soundings made as to the materials to be excavated, which showed earth and dirt with only a small quantity of rock which was negligible in quantity, and that therefore bids were called for earth excavation only. That rock excavation was a particular class of work which should have properly come within the bounds of the contract.

The evidence showed that at the time the rock was discovered, the contractor immediately notified the engineer and the defendant board of commissioners, that the board of commissioners representing the city viewed the rock, took the matter under advisement, and the engineer for the city was instructed to keep track of the rock, and the contractor was instructed to proceed and perform the contract. That the engineer of the city in charge of the work advised the contractor that he was entitled to pay for the rock. After that the city engineer kept a record of the amount of rock excavated. That before the completion of the work the engineer died. That before the death of the engineer no price was fixed or agreed upon between the engineer and the contractor as provided in the contract.

This contract should receive the same construction as contracts between individuals. The municipality had a right to waive the provisions in the contract as to giving written notice as to claim for extra work. As soon as the rock was discovered the contractor gave notice to the engineer and the defendant city; the city commissioners saw the condition and took the same under advisement and did not pass upon the claim until the final estimate was in. The engineer kept track of the rock. The rock had not been bid upon, and was not considered in the contract. Upon discovery of the rock, which was a surprise to the defendant city's engineer in charge of the work, the contractor, and the defendant city, it had to be excavated. The work was done by the contractor and the city received the benefit, and the city by its action waived written demand for extra pay.

The city in erecting its water works system was acting in a proprietary capacity and not in a governmental capacity, and its contracts are governed by the same rules as contracts made between individuals. A city is authorized by the Constitution of Oklahoma to engage in business, and when so engaged, it is subject to the same rules of law as any other corporation engaged in like business.

The case of City of Shawnee v. Roush, 101 Okla. 60, 223 Pac. 354, in the second paragraph of the syllabus reads as follows:

"A city has two classes of powers—the one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other proprietary, quasi private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and of the city itself as a legal personality; and, if the power is substantially of the latter class, the city cannot escape liability for the careful performance thereof merely because it may in some general way also relate to a function of the government."

This case, supra, followed the earlier case of Fretz v. City of Edmond et al., 66 Okla. 262, 168 Pac. 800, the second paragraph of the syllabus of which reads as follows:

"Municipal corporations in operating a water plant exercise business and administrative functions, rather than those strictly governmental in their nature, and in the exercise of such functions are governed largely by the same rules applicable to individuals or private corporations engaged in the same business."

Under the charter of the defendant city, the city engineer is one of the elected officers elected by the Commissioners.

Article 11, sec. 15, of the charter provides:

"Officers Elected by Commissioners. The commissioners shall at their first meeting, or as soon as practicable thereafter, elect by a majority vote the following officers: * * * Civil Engineer. * * *"

And the charter prescribes their duties (article 11, sec. 16):

"Each officer or employee of the city shall perform such duties as may herein be prescribed, or as may appertain to his office or employment, and in addition, such duties as may be imposed upon him by the board. * * *"

Under the terms of the contract heretofore set out, the engineer is given supervision and general direction of all the work and is made the agent of the defendant city, as shown by the provisions in the contract under the heading "Control of Work"; and un-

der the contract in question, under the heading "Definitions," which provides:

"Wherever the words 'approved or approval' are used in these specifications they shall be understood to mean the approval of the engineer."

And again in the general conditions, made a part of contract in question, it provides:

"The work, during its progress, must conform with the lines and grades given by the engineer and must be done in conformity with the plans and specifications and in accordance with the directions given by the engineer. * * *"

And again under the heading "Discrepancies:"

"Should any portions of the plans and specifications be obscure or in dispute they shall be referred to the engineer, who shall decide as to the true meaning and intent, and his decision shall be final and conclusive."

As to the construction placed upon the strict lettering of the terms and conditions of contracts such as in the case at bar, we find the same construed in the case of United States v. Smith, 256 U. S. 11, 65 L. Ed. 808, as follows:

"Despite provisions in a contract with the United States for excavating 'sand, gravel, and boulders, all in unknown quantities,' from a ship channel, which make final the decision of the government engineer, officer in charge as to quality and quantity of work, require the contractors to observe his instructions, and provide that modifications of the work in character and quality, whether of labor or materials, are to be agreed upon in writing, and, unless so agreed upon or expressly required in writing, no claim shall be made therefor, such contractors may recover from the government for the extra work (including the loss to them while waiting for the government engineer to locate such work) of excavating limestone rock and limestone bedrock in such channel, pursuant to the order of the government engineer who, over the contractors' protest that such materials were not included in the contract, and in opposition to their request for the fixing of an extra price, insisted upon the removal of such materials, stating that if the contractors did not remove the same they would be declared in default, that the work would be taken from them, be done and charged to them, and be paid for from the retained percentages for the work already performed, and if the percentages were not sufficient for that purpose they and their bondsmen would be proceeded against, since the conduct of such officer was repellant of appeal or of any alternative but submission to his orders, with its consequences."

In the case at bar the plaintiffs were required to complete said contract by the city engineer and, under the contract, they were compelled to finish the project.

The defendants were responsible for their acts in inducing the plaintiffs to bid upon the work by the positive representation that there was no rock to be encountered except in negligible quantities.

In the case of Oklahoma City v. Derr, 109 Okla. 192, 235 Pac. 218, the syllabus reads as follows:

"The contractor in the performance of a municipal contract must bear the unexpected expenses arising from unforeseen difficulties incident to the performance of the work, but the contractor is not liable for the consequences of defect in the plans and specifications, prepared and furnished by the owner."

"Where estimate by city engineer for work for municipality, as required by Comp. Stat. 1921, sec. 4577, did not contemplate extra work caused by accidental severing of water main, the fact that additional items plus original contract price for work exceeded estimate was no defense in action by contractor against city."

In the body of the opinion the court said:

"The formation of the earth to be excavated may be different from that anticipated by the builder and the contractor may find quicksand where he anticipated finding rock formation for the foundation of the structure to be built, but this does not change the rule. He must meet the performance of the contract at the cost he contracted for.

"A different rule applies where the contractor must build and complete a structure according to the plans and specifications by the owner. The contractor will not be required to bear extra expense resulting from the performance of the contract on account of defects in the plans and specifications prepared and submitted by the owner."

Also, in the case of Hollerbach v. United States, 233 U. S. 165, 58 L. Ed. 898, the court said:

"The damage incurred by persons contracting to repair a dam for the United States because the existing dam was not backed with broken stone, sawdust, and sediment as positively stated in the specifications, may be recovered from the government notwithstanding the cautionary provisions of other paragraphs of the specifications that the quantities given are approximate only, that no claim shall be made against the United States on account of any excess or deficiency, absolute or relative in the same, and that bidders or their authorized agents are expected to visit the site, ascertain the nature of the work, and make their own estimates."

See, also, the cases of U. S. v. Spearing,

248 U. S. 132, 63 L. Ed. 166; Christie v. U. S., 237 U. S. 234, 59 L. Ed. 933.

The defendants were responsible for the extra work of excavating the rock, which was a material different than represented by the defendant city and which said excavation of rock was worth a greater sum to excavate than the material as represented by the defendant city to be excavated, and the material bid upon.

In the case of Christie v. U. S., 237 U. S. 234, 59 L. Ed. 933, the court held:

"The extra expense over what would have been necessary had the character of the materials to be penetrated and excavated been such as was represented by the government boring sheets should be allowed to the contractors for the construction of locks and dams for the United States in an alluvial stream where, the time not being sufficient for the contractors to make their own borings, they relied upon the government borings, which the specifications falsely stated represented 'as far as known' the material to be excavated, although such specifications further provided that bidders must inform and satisfy themselves as to the nature of the material."

In the case at bar the undisputed proof showed that the bidders did not have sufficient time to make their own borings and that they relied upon the defendant city's borings and soundings.

This doctrine was also followed in the cases of U. S. v. Smith, 256 U. S. 11, 65 L. Ed. 808, and U. S. v. Atlantic Dredging Co., 253 U. S. 1, 64 L. Ed. 735.

Under the undisputed facts adduced in the trial of the case, and the law applicable thereto, we hold that the defendant city was clearly liable for the extra work performed by the contractor, to wit, the excavation of the rock, and that the only question that should have been submitted to the jury was the reasonable value for the excavation of the rock. The court erred in refusing to give instruction No. 1, requested by the plaintiffs.

The judgment of the lower court is reversed, and the cause remanded for new trial not inconsistent with this opinion.

LESTER, C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. RILEY, J., absent.