## POWELL v. STATE.
### No. 8271.

Court of Civil Appeals of Texas. Austin.
April 6, 1938.

Rehearing Denied July 20, 1938.

Wood & Wood, of Austin, for appellant.

Wm. McCraw, Atty. Gen., and Leonard King and Wm. M. Brown, Asst. Attys. Gen., for the State.

BAUGH, Justice.

Appeal is from a judgment based upon an instructed verdict in favor of the State in a suit brought by Powell against the State under permission to do so granted by the Legislature. The suit was for extra compensation by way of damages growing out of a contract between Powell and the Highway Commission for construction of 12.855 miles of highway in Gillespie County. The contract provided for several undertakings, but the only one here involved relates to the excavation work done on said project. The following material facts are not controverted:

The project was originally advertised by the Highway Commission as what is termed a "classified" project, on which bids were to be opened at 10 a. m., December 1, 1930. In the notice sent to bidders the "approximate quantities" of materials to be removed were stated to be ·53,585 cubic yards of common roadway excavation and 17,412 cubic yards of solid rock, with the further information to bidders that "Detailed plans and specifications of the work may be seen for examination, and information may be obtained at the office of E. B. Calvin, Resident Engineer, Fredericksburg, Texas, and at the office of the State Highway Dept."

Subsequent to such advertisement for bids, the Highway Commission changed the project from a "classified" to an "unclassified" job, and appellant was so notified only a few days before the bids were to be opened, and not in time for him to make a full investigation himself of the terrain over which the contract was to be let and ascertain for himself the quantity of rock beneath the surface which might be encountered. He did, however, send his foreman to the site of the project who made a hurried examination of it, discussed the matter with Calvin at Fredericksburg, who told him that the Highway Department had made soundings and borings on the route; that he thought the quantities of materials as shown in the notices were approximately correct and that they could be relied upon as a basis for a bid on an "unclassified" project.

Upon completion of the project it was found that these estimates were incorrect; and that appellant had to remove 36,474 cubic yards of rock instead of the 17,412 stated in the notices for bids; and only 33,930 cubic yards of common earth instead of 53,585 as indicated in such notices. All the plans, specifications, maps, profile sheets, etc., on which bids were asked were attached to and made a part of the contract executed by Powell, as well as the "blank proposal sheet" on which Powell was awarded such contract, and on which he made his bid to remove the entire 70,997 cubic yards of "unclassified roadway excavation" at 35 cents per cubic yard.

It is the contention of appellant that in view of all these facts and circumstances, and of the fact the notices showing the separate quantities of rock and common soil to be excavated, same being first advertised as a "classified" project, were attached to and made a part of the contract subsequently let as an "unclassified" project, there was a representation and a warranty by the State upon which he relied that the materials in the quantities indicated only would be encountered. That such was what he contracted for and that the additional rock encountered was extra work, beyond the provisions of his contract for which he was entitled to be paid. In support of this contention appellant relies in large measure on the case of Maney v. Oklahoma City, 150 Okl. 77, 300 P. 642, 76 A.L.R. 258, and annotated cases thereunder on pages 268–278. The rule announced in that case was followed in a majority opinion by the Dallas Court of Civil Appeals in City of Dallas v. Shortall, 87 S.W.2d 844. That rule as summarized

**962**

by the annotator under the Maney Case is: "The general rule may be deduced from the decisions that where plans or specifications lead a public contractor reasonably to believe that conditions indicated therein exist, and may be relied upon in making his bid, he will be entitled to compensation for extra work or expense made necessary by conditions being other than as so represented." This rule was deduced from the decisions of the Supreme Court of the United States in contracts made with the United States. Hollerbach v. United States, 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898; Christie v. United States, 237 U.S. 234, 35 S.Ct. 565, 59 L.Ed. 933; United States v. Atlantic Dredging Company, 253 U.S. 1, 40 S.Ct. 423, 64 L.Ed. 735; United States v. L. P. & J. A. Smith, 256 U.S. 11, 12, 41 S.Ct. 413, 414, 65 L.Ed. 808.

The Supreme Court having granted a writ of error in the Shortall Case, supra, we have withheld disposition of the instant case until the Supreme Court decided that case. That court on March 23, 1938, reversed the judgment of the Court of Civil Appeals in the Shortall Case and rendered judgment for the City of Dallas. See 114 S.W.2d 536.

While no such distinction is drawn in the Shortall Case, it is not amiss to observe that in the case of Maney v. Oklahoma City, 150 Okl. 77, 300 P. 642, 76 A.L.R. 258, relied upon by appellant herein, the court held that in that instance the city was acting in a proprietary, and not in a governmental, capacity; whereas in the instant case the State, in the construction of its public highways acts in a governmental capacity. Brooks v. State, Tex.Civ.App., 68 S.W.2d 534, writ refused, and cases therein cited. That being true the State would not be liable for any tortious acts of its officers, agents or employees. And the mere permission to sue the State in no wise alters this well settled rule nor imposes any such liability upon the State. Brooks v. State, supra. While appellant in the instant case alleged fraudulent misrepresentations by the Highway Department as to the quantities of rock and earthen material to be excavated, and that no tests were made upon which to base such estimates, no proof was offered as to this allegation, no bad faith charged against the engineers of the Highway Department, and on this appeal appellant relies upon the contention that the quantities of materials stated in the notices for

bids upon the project amounted to warranties by the State upon which he had a right to rely, and did rely, in entering into his contract with the State, and that consequently he was entitled under the cases cited to compensation accordingly.

The notices for bids sent to appellant and others on the project here involved, and on which the contract made with the State was predicated, after specifying the units of work involved, contained the following:

"Item 2. Proposal Requirements and Conditions.

"2.3. Examination of Plans, Specifications, Special Provisions, and Site of Work. The bidder is required to examine carefully the site of, and the proposal, plans, and specifications and contract form for the work contemplated, and it will be assumed that he has judged for and satisfied himself as to the conditions to be encountered, as to the character, quality and quantities of work to be performed and materials to be furnished, and as to the requirements of these specifications, special provisions, and contract."

"Item 9. Measurement and Payment.

"9.2. Scope of Payment. The Contractor shall accept the compensation, as herein provided, in full payment for furnishing all materials, labor, tools and equipment necessary to the completed work and for performing all work contemplated and embraced under the contract; also for loss of damage arising from the nature of the work, or from the action of the elements or from any unforeseen difficulties which may be encountered during the prosecution of the work * * *."

"Item 12. Roadway Excavation.

"12.1. Description. This work shall consist of excavating the roadway, removing and satisfactorily disposing of all materials taken from within the limits of the work, and shall include all excavation, shaping and sloping necessary for the construction, preparation and completion of all embankments, subgrade, shoulders, slopes, gutters, intersections, approaches and private entrances, as directed, strictly to the required alignment, grade and typical cross section, shown on the plans. All material excavated hereunder of whatever material shall be considered 'Unclassified' unless in the proposal, prices are requested and tendered for 'Solid Rock' and 'Common' excavation, in which case all materials shall be classified as follows:

"'Solid Rock' shall include all rock masses which cannot be removed without blasting, also all detached rock or boulders measuring not less than one-half cubic yard each.

"'Common' excavation shall include all other materials encountered."

The bid made by appellant on the form provided by the Highway Department, contained among other things, the following:

"The undersigned, as bidder, declares that the only person or parties interested in this proposal as principals are those named herein; that this proposal is made without collusion with any other person, firm, corporation; that he has carefully examined the form of contract instructions to bidders, profiles, grades, specifications, and the plans therein referred to, and has carefully examined the locations, conditions and classes of materials of the proposed work; and agrees that he will provide all the necessary machinery, tools, apparatus, and other means of construction, and will do all the work and furnish all the materials called for in the contract and specifications in the manner prescribed therein and according to the requirements of the Engineer as therein set forth.

"It is understood that the following quantities of work to be done are approximate only, and are intended principally to serve as a guide in figuring out the bids."

The "Plan and Equipment Questionnaire" executed by Powell under oath, submitted with his bid and attached to his contract with the State, among other things, contained the following:

"The signatory of this questionnaire guarantees the truth and accuracy of all statements and of all answers to interrogatories hereinafter made.

"1. In what manner have you inspected this proposed work: Explain in detail.

"My Supt. Mr. H. T. Murphy has been over line with plans."

It is not controverted that Powell learned on Friday before bids were to be opened on the following Monday that this project, so far as the excavations here involved are concerned, had been changed from a "classified" to an "unclassified" project; and that his bid must be made and the contract awarded accordingly. He thereupon sent his foreman to the site of the project to inspect it as time would permit and to discuss the matter with the engineer at Fredericksburg. His bid was thereupon prepared on Monday morning with full knowledge of this change. The contract executed with the Highway Department was dated December 20, 1930, and approved by the Highway Commission on January 21, 1931. With regard to this contract and his liability under it, we quote his testimony on the trial:

"Q. And Mr. Murphy also told you on Friday night when he came in that it was to be unclassified? A. An unclassified job.

"Q. But you still didn't consider that item of classified or unclassified of sufficient importance to be considered? A. Them notes being on there, it wouldn't make any difference whether I seen the notes or didn't see them. I had the proposal that it was unclassified—I knew it was being let as an unclassified job.

"Q. Well, the fact is, then, you knew it was an unclassified job and you knew what an unclassified job was? A. Yes, sir.

"Q. And that if you took an unclassified job on the basis of thirty-five cents per cubic yard for whatever material may be encountered, that the contract would require you to move that for thirty-five cents; is that right? A. That is right."

Even if the quantities of materials indicated in the notices for bids issued by the Highway Department for letting be treated as warranties as applied to a "classified" project; when appellant was advised on Friday that such project was to be let as "unclassified," in the light of his own testimony he was then put upon notice that he could not so treat them, and must ascertain the facts for himself. This he apparently undertook to do in a cursory and limited manner. Manifestly in the limited time remaining he could not himself ascertain such facts; but when advised that he must determine these facts for himself, and be bound by his contract in any event, he could have either refrained from bidding or sought additional time in which to make tests of the area himself. Though the contract was not signed until 20 days after he made his bid, and not approved by the Highway Commission until 30 days after that, Powell took no steps to ascertain such facts himself, nor to protect himself against what he admittedly knew the terms of his contract imposed.

It appears, therefore, that the instant case comes within the general rule, quoted in City of Dallas v. Shortall, supra (114 S.W.2d page 540), that "where one

964

agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered." See Weston v. State of New York, 262 N.Y. 46, 186 N.E. 197, 88 A.L.R. 1219, and annotations. While it is true that the Highway Department made its examination for the purposes of advertising for bids on a "classified" basis, and its engineers told Powell that they thought he could rely on same; the fact that he was notified before making his bid, which he could make or not as he chose, that such bids must be made upon an "unclassified" basis and the contract awarded accordingly was tantamount to, and amounted to, an express notice to Powell that he must take his own risk in the premises, regardless of what the preliminary estimates showed; and that though the engineers deemed them approximately correct, he must accept them, if he did so, at his own peril.

■ It is clear that there was no bad faith on the part of the State in the representations, if they be treated as such, made by the Highway Department. Nor was Powell entitled to take such estimates of the quantities of materials to be encountered as representations· of positive facts on which he could rely without investigation on his part to determine their truth or falsity. The rule announced by the Supreme Court in the Shortall Case, after reviewing numerous cases, is as follows: "From these decisions, and many others which might be cited, we deduce the conclusion that in order for plaintiff to be entitled to recover damages for extra expenses incurred by him as alleged, it must appear that the so-called representation that the tunnel could be constructed through solid rock was made as an affirmative statement of fact, or as a positive assertion, and made under such circumstances, or with such accompanying assurances, as justified plaintiff in relying

thereon, without investigation on his part; and that he in fact made no independent investigation on his part to ascertain the truth."

We conclude, therefore, that appellant did not, as a matter of law, show himself entitled to any compensation other than what his contract provided; and that the trial court properly instructed a verdict against him.

While the facts in the instant case present an instance of hardship and misfortune, it is one where, having made an express contract fixing his liability, the law can afford appellant no relief. If, under said contract, appellant had encountered less solid rock excavation, instead of more, than the quantities stated in the estimates of the Highway Department, manifestly the State would be in no position to reduce its payment to him below the contract price. Consequently Powell is in no position to claim an increase over that amount. Weston v. State of New York, supra.

■ These conclusions as to the instant case have been reached independent of the power of the legislature under Art. 3, § 53, of the Constitution of Texas, Vernon's Ann.St.Const. art. 3, § 53, prohibiting the payment of extra compensation to a public contractor after a contract with him has been entered into and performed in whole or in part, to make or authorize such payment. Without passing upon that question here, that provision of the Constitution itself, in view of the undisputed facts of this case, would seem to present an insurmountable ·obstacle to appellant's right of recovery. See Gray County, Tex., v. Hamer, 5 Cir., 277 F. 155; Weston v. State of New York, supra; Wade v. Tacoma, 131 Wash. 245, 230 P. 99; Anno. in 88 A.L.R. 1223–1231.

For the reasons stated the judgment of ·the trial court is affirmed.

Affirmed.