The **BOARD OF REGENTS OF OKLAHOMA COLLEGES et al., Plaintiffs in Error,**

v.

**WALTER NASHERT AND SONS, INC., an Oklahoma Corporation, Defendant in Error.**

**No. 42194.**

Supreme Court of Oklahoma.

July 1, 1969.

G. T. Blankenship, Atty. Gen., W. J. Monroe, First Asst. Atty. Gen., Harry Johnson, Oklahoma City, for plaintiffs in error.

Halley, Halley & Spradling, John T. Spradling, Oklahoma City, for defendant in error.

JACKSON, Justice.

Plaintiff in the trial court, Walter Nashert and Sons, Inc., a building contractor, was the successful bidder on a contract for the construction of a dormitory on the campus of southwestern State College at Weatherford, Oklahoma. In the course of preparing its bid as the general contractor, plaintiff called for bids on various items from sub-contractors. It accepted a bid of $4800 from Mr. H for certain excavation work called for in the contract, but did not require him to post a performance bond. Soon after the excavation work actually started, Mr. H encountered material his equipment could not move and he abandoned the job. Plaintiff thereafter completed it but had to use blasting techniques at considerable extra expense in order to do so. It then filed an action in the District Court for the purpose of collecting extra pay, over and above the amount of its lump sum bid. From the judgment for plaintiff, defendants, the Board of Regents of Oklahoma Colleges, et al., appeal.

Plaintiff's relief would normally have been found in an ordinary action on contract, based on a paragraph to which we shall refer hereinafter as the "Extra Pay Provision". However, for reasons which are immaterial here, it chose to file an action which in form was one of equitable cognizance—an application for a writ of mandamus ordering the defendants to make the extra payment or issue to plaintiff self-liquidating bonds in the proper amount. The action was based on allegations of fraud (1) in the drafting of the contract, and (2) in withholding certain material information as to sub-surface conditions at the building site.

As to (1) above, the allegations were to the effect that the contract was drawn in such a way as to mislead prospective bidders and persuade them to believe that extra pay would be made for excavation of material too hard to be removed by ordinary mechanical means. There was no allegation or evidence that any provision of the contract was actually concealed, or overlooked, and no allegation or evidence of fraudulent representations in the inducement of the contract aside from the language actually appearing on the face thereof. This phase of the controversy therefore presents only the restricted question of how the language of the contract should be interpreted. Under plaintiff's

interpretation (which was adopted by the trial court) plaintiff was justified in believing that in the excavation it would encounter "reddish brown sandstone, soft", which would be removable by ordinary mechanical means. Under defendants' construction, the contract plainly put plaintiff on notice of the fact that it would encounter not only "reddish brown sandstone, soft", but also "reddish brown sandstone", a harder substance.

Regardless of the form in which it was brought, the action was basically an action for money due by the terms of the contract. The contract provision upon which plaintiff relies, the Extra Pay Provision, was as follows:

> "Should the Contractor encounter subsurface and/or latent conditions at the site materially differing from those shown on the Plans or indicated in the Specifications, he shall immediately give notice to the Architect/Engineer of such conditions before they are disturbed. The Architect/Engineer will thereupon promptly investigate the conditions, and if he finds that they materially differ from those shown on the Plans or indicated in the Specifications, he will at once make such changes in the Plans and/or Specifications as he may find necessary, any increase or decrease of cost resulting from such changes to be adjusted in the manner provided in Paragraph 17 of the General Conditions:"

After a careful examination of the entire record before us we find no evidence that plaintiff encountered conditions "materially differing from those shown on the Plans or indicated in the Specifications". As a matter of fact, plaintiff's own witnesses identified the material actually encountered as "Reddish Brown Sandstone", the existence of which at the building site was plainly indicated on Sheet No. 1 of the Specifications, which was called the Plot Plan.

Plaintiff tacitly concedes that the Plot Plan did show the existence of "reddish brown sandstone" at the building site. It

argues, in effect, that it was entitled figuratively to "close its eyes" to the information on the Plot Plan and to other unambiguous provisions of the contract making the determination of sub-surface conditions at the building site "at locations other than those shown" the responsibility of the contractor, and providing that excavation would be "unclassified", meaning (according to plaintiff's own witnesses) that the contractor would be expected to excavate whatever material was encountered, regardless of its nature, without extra pay.

■ Plaintiff concedes that as a general rule, a contract is to be construed as a whole. This rule is stated as follows in Freeling v. Wood, Okl., 361 P.2d 1061:

> "In construing a written contract, the whole of the instrument is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."

Reduced to its essentials, plaintiff's claim is that it was entitled to rely almost exclusively upon the third sentence *only* in the following paragraph of the contract:

"CLASSIFICATION OF EXCAVATION: Excavation will be unclassified. No additional payment will be made for excavation regardless of the material encountered. Test borings made for buildings near the site of both additions indicate sandy loam and reddish brown sandstone, soft. See Soil Test Data on Plot Plan."

The Plot Plan, referred to in the last sentence above, was Sheet No. 1 of 53 sheets of drawings and specifications detailing the work to be done under the contract. It plainly showed, in graphic form, all of the factual information as to subsurface conditions at the building site obtained from six test holes bored by Standard Testing and Engineering Company for the architects. Among other things, it showed substantial layers of "reddish brown sandstone".

In order to avoid the effect of the rule that a contract is to be construed as a whole, with each clause helping to inter-

pret the others, plaintiff relies upon the following paragraph of the contract, which we will call the "Provision for Conflicts":

"Any provision in any of the Contract Documents which may be in conflict or inconsistent with any of the paragraphs in these General Conditions shall be void to the extent of such conflict or inconsistency."

■ It is clear that the third sentence of the Classification of Excavation paragraph, supra, upon which plaintiff seeks to rely, was no more than a commentary on what the test borings shown on the Plot Plan (specifications) indicate. The fourth sentence invited attention to the "Soil Test Data on Plot Plan." Therefore plaintiff had notice of the Plot Plan and all of the soil conditions disclosed therein, 66 C.J.S. Notice § 13e; 39 Am.Jur., Notice and Notices § 22, and could not close its eyes to what was in plain sight.

Construing the detailed factual information on the Plot Plan and the third sentence of the "Classification of Excavation" paragraph together, and considering the fact that that sentence was *immediately* followed by directions to "See Soil Test Data on Plot Plan", it is obvious that the reference to "sandy loam and reddish brown sandstone, soft" was not intended as a representation or warranty that only "reddish brown sandstone, soft" would be encountered.

■ Under the Extra Pay Provision (which was a part of the General Conditions) the contractor would have been entitled to extra pay in case "conditions at the site materially differing from those shown on the Plans * * *" had been found; but under the second sentence of the classification of Excavation paragraph, "no additional payment will be made for excavation regardless of the material encountered". As to this conflict, under the Provision for Conflicts, the Extra Pay Provision, being a part of the General Conditions, controls. However, as we have seen even giving the Extra Pay Provision controlling effect, plaintiff is still not entitled to extra pay

because there was no evidence that conditions "materially differing from those shown on the Plans * * *" were encountered.

We now consider other circumstances shown in the evidence, not involving conflicts actually appearing on the face of the contract which, plaintiff argues, indicate actual or constructive fraud on the part of defendants.

We have previously referred to the test holes bored by Standard Testing and Engineering Company for the architects, in advance of the advertisement for bids on the contract. In a portion of Standard's report to the architects captioned "General Discussion and Recommendation" Standard interpreted its own test hole data as follows:

"The materials encountered consisted of loosely cemented to moderately cemented sandstones, probably better described as packsand and soft sandstones. * * * The reddish brown sandstone is hard enough that it probably cannot be dug readily with dragline or clamshell. It will probably be necessary to jackhammer or perhaps rely on blasting in order to excavate this material. * * *"

This language was not included in the contract and plaintiff argues that the omission of the last two sentences quoted constitutes fraud on the part of the defendants, particularly when considered in connection with the statement in the contract that test borings indicated "sandy loom and reddish brown sandstone, soft".

■ We are unable to agree. The *factual* portion of Standard's report was admittedly included on the Plot Plan, showing in precise detail the nature of the material found in each test hole, and its exact location in the hole. Also, the following paragraph, captioned "Sub Soil Test Data" was included in the contract:

"The following sub-soil test data is taken from a report of Test Results of Foundation Investigation made by Mr. Hugh A. Bradshaw, of the Standard Testing and Engineering Company of Oklahoma City, Oklahoma, for the

Southwestern State College, Weatherford, Oklahoma, at the order of Mr. Ivan M. Reynolds, of Reynolds and Morrison, Architects. This report was dated April 19, 1963, and reported to Reynolds and Morrison, Architects, at 530 Hightower Building, Oklahoma City, Oklahoma, on April 24, 1963. Laboratory number was 6668. The responsibility for the determination of sub-soil conditions at locations other than those shown rests with the Contractor. The test holes referred to in this report and all test hole data, are shown on the Plot Plan."

Under well settled rules for the interpretation of contracts, a contract is to be construed "so as to give effect to every part, if reasonably practicable". See 15 O.S. 1961, Sec. 157. Under this rule, it is obvious that the "Sub Soil Test Data" paragraph, with its specific and detailed reference to Standard's report, was included for the purpose of placing prospective bidders on notice as to the contents of Standard's report. Unless this is true, the "Sub Soil Test Data" paragraph is mere surplusage and has no effect. It therefore cannot be said that the quoted language from Standard's report was concealed or withheld.

In a form prepared by the architect for the use of prospective bidders, captioned "Bid for Lump Sum Contract", plaintiff was required to make a "unit price" bid for various items, including one for "rock excavation". Plaintiff argues in effect that the only possible purpose of including this item was to mislead prospective bidders and persuade them to believe that extra pay would be made on a unit price basis for all rock excavation. Again, we are unable to agree.

As we have noted, plaintiff would have been entitled to extra pay under the Extra Pay Provision if conditions materially differing from those shown on the plans or specifications had been encountered. In such case, by the terms of the Extra Pay Provision, payment would have been made "in the manner provided by Paragraph 17 of the General Conditions". Paragraph 17

was entitled "Changes in the Work" and contained provision for three different methods to be used, either separately or in combination, in determining the price to be paid for extra work occasioned by change orders (not necessarily limited to excavation work). One of these methods called for the use of "unit prices previously approved". This is obviously why the unit price bid for rock excavation was required.

The cases principally relied upon by plaintiff on the question of extra pay under construction contracts are not in point. In Maney v. Oklahoma City, 150 Okl. 77, 300 P. 642, 76 A.L.R. 258, the defendant City represented "that there was no rock to be encountered except in negligible quantities" and took a bid for "earth excavation" only. In the instant case the nature of the material to be excavated was plainly shown on the Plot Plan, and the contract was not limited to "earth" excavation. In Lippert Bros. v. City of Atoka, D.C., 94 F.Supp. 630, the contract specifically described the engineer's estimate of the amount of "gunite repair" (2400 square feet) as approximate only, and the amount of gunite repair work to be done, on a unit price basis, was not limited in terms of square feet. At the conclusion of the construction job, the engineer arbitrarily limited his approval of the contractor's claim for gunite repair to 2400 square feet, although there was no question as to the quantity or quality of the work done. The court held in effect that under the plain terms of the contract, the contractor was entitled to payment for all the gunite repair work done. In the instant case there was no representation as to the amount of excavation work to be done, and the excavation part of the contract was not awarded on a unit price basis.

After a careful consideration of the entire record before us, we hold that plaintiff was not entitled to extra pay under the Extra Pay provision because there was no evidence that conditions materially differing from those shown on the plans and specifications were encountered, and that the trial court's judgment to the contrary

is clearly against the weight of the evidence.

The judgment of the trial court is therefore reversed.

IRWIN, C. J., and WILLIAMS, BLACKBIRD, HODGES, LAVENDER and McINERNEY, JJ., concur.

BERRY, V. C. J., and DAVISON, J., concur in result.