GreeN, Judge,
delivered the opinion of the court:
It appears that the plaintiff entered into a written contract with the defendant for performing a certain amount of earth work according to specifications attached, this work being in the construction of a levee.
After the work provided for in the contract had been nearly completed, the contracting officer of defendant issued an order for the construction of a riverside false berm as described in finding 6, and stated in the order that “payment for additional yardage made necessary would be made at the contract price per yard.” This additional work ordered was not contemplated or required under the original contract, but the plaintiff was paid for the work only in accordance with the yardage price stated therein. It now brings suit to recover the additional cost of this work over and above the contract price.
The order made by the contracting officer unquestionably ■changed the contract and increased the amount due under it. The work was necessary for the completion of the project and within the general scope thereof and the contract provided for changes being made but Article 3 (see finding 6) provided that “If such changes cause an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accord *325 ingly.” The contracting officer paid no attention to the provision quoted above but required the plaintiff to perform the work in accordance with his order, although the change made a large increase in the amount due under the contract.
This we think was clearly a breach of the contract. As against this conclusion it is argued that Article 3 provided that “no change involving an estimated increase or decrease of more than $500 shall be ordered unless approved in writing by the head of the department or his duly authorized representative.”
It is said that this provision was not complied with, but the contracting officer who made the contract and the order for additional work was the “duly authorized representative” of the department and has so been treated in all of our decisions. As he ordered the change he must have approved it. It is also said that the plaintiff was not obliged to comply with the order if it was unauthorized but the order was authorized and the contract required the contractor to immediately proceed with the work in accordance with the-order. It is quite evident that the order of the contracting officer fixing the contract price as a rate of payment for this additional work was not an “adjustment” required byArticle S. An “adjustment” is a change to meet changed conditions. Here no change was made although the findings show clearly changed conditions which made the additional work more-costly not merely in quantity but per yard. In view of this-fact, it is clear that it was not an “equitable adjustment” for no allowance whatever was made to the plaintiff on account of the additional cost per yard. Moreover the reading of the order shows that the contracting officer was not making any attempt at adjustment or any pretense thereof. He simply held that the contract rate applied to the additional work done. Here we have a case where the contracting officer not only refused to make an equitable adjustment but no adjustment whatever was made and certainly not an equitable adjustment. This was a breach of Article 3, and by reason of this breach, the defendant was not entitled to any benefit from the remaining provisions of this article. As the case stands,, it is merely one in which the defendant’s agent ordered additional earth moved above that required by the contract. The- *326 findings sliow that this earth was so located that the cost of moving it would be much increased over the yardage price stated in the original contract.
It is especially urged, however, in the dissenting opinion that Article 15 provided that all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer subject to appeal by the contractor. It is argued that there was a dispute of fact involved in the order of the contracting officer and that when he stated that the plaintiff would be paid for the additional work at the contract rate, he was in effect saying that this was the reasonable value of the additional work ordered and that this was a question of fact which he had the power to decide.
We think it has been shown above that he was not deciding a question of fact and that his order cannot be so construed. He did, in effect, assert that the contract rate applied to the additional work ordered but this involved a question of law which he had no authority to decide. We have also held above that he not only did not make an equitable adjustment but made no adjustment whatever.
Where extra work is ordered by the proper officer which is necessary and it is accepted and used by the defendant we have held that there is an implied contract to pay the contractor the reasonable value thereof unless there is a provision in the contract directly forbidding payment under the circumstances of the case. The general provisions with reference to the naval contracts do not prevent the application of this rule, and it was held in United States v. Spearin, 248 U. S. 132, 139, that neither 3744 of the Revised Statutes, which provides that contracts of the Navy Department shall be reduced to writing, nor the parol evidence rule, precludes reliance upon a warranty implied by law. See Kellogg Bridge Co. v. Hamilton, 110 U. S. 108. United States v. Spearin, supra.
It is difficult to find any case where the precise question involved in this case was discussed at length, although the controlling principles have been decided. It has been held heretofore in effect that the provision for equitable adjustment where a change was made in the contract which increased either the quantity or the expense of the work was *327 a peremptory requirement and must be followed. The reason for this assumption is manifest, for if it were not an absolute requirement but left to the opinion or judgment of the contracting officer, it would be no protection whatever to the plaintiff and would permit the taking of plaintiff’s work without compensation.
As no adjustment was made of the additional cost, the ■plaintiff under all of the authorities was not obliged to take an appeal or even to protest and without an appeal could ■bring suit to recover on an implied contract the reasonable value of the work. The plaintiff, however, did protest against the decision of the contracting officer that payment would be made under the contract rate.
It should be observed in this connection that even if the ■contracting officer was intending to make an equitable adjustment of the price per yard (we think it is clear that he •did not) this was not a matter upon which he was authorized to make a final decision. The Supreme Court has held in two cases that the question of what is an equitable adjustment is not one of fact but one of law. See Case v. Los Angeles Lumber Co., 308 U. S. 106, 114, 115, 119, and Securities Commission v. U. S. Realty Co., 310 U. S. 434, 452.
The question of whether an equitable adjustment was made would therefore in any event be one for this court to decide regardless of the form of the order of the contracting officer; and we have held above not only that the order was not an equitable adjustment but that there was no adjustment whatever.
Although cases exactly similar on the facts cannot be cited, the case of the United States v. Smith, 256 U. S. 11, 16, involves a similar question. In that case, the specifications provide that the decision of the engineer officer in charge as to quality and quantity of the work was final, and that his instructions were required to be observed by the contractor. The contract further required that modifications of the work in character and quality, whether of labor or material, were to be agreed to in writing and unless so agreed to or expressly required in writing no claim should be made therefor.
After part of the excavation had been made, it appeared that the material to be moved was of a very different quality *328 from that stated in the specifications of the contract much more difficult and costly to be excavated. The plaintiff then claimed to be entitled to receive more for the work and an extra price for the reason that the quality of the excavation made it more difficult and costly than that specified in the specifications. His request for an extra price was refused and he was told if he did not proceed he would be regarded as in default. The evidence showed without controversy that-the material was much more difficult to excavate than that described in the contract. A defense was set up based upon the provisions of the contract set out above but the Supreme Court said that this defense overlooked the uselessness of soliciting or expecting any change to be made by the contracting officer and that the right of the plaintiff “to recover the price for the work done is indisputable.” In the case-cited, the contracting officer was authorized to decide whether the quality of the work was such as to require a higher price-but it was said that the action of the contracting officer was contrary to the provisions of the contract with reference to the material to be excavated. In the case before us, the new work to be done was also outside of the provisions of the contract and the refusal by the contracting officer to comply with the provisions of the contract with reference to its modifications rendered no appeal necessary.
The circumstances of the case before us are the same as in the Smith case, supra. The findings show that when the order was made, the plaintiff objected thereto on the ground that it was not within the contract terms and gave notice to the contracting officer that it would later assert a claim for extra costs occasioned by the change jin the work, thus complying with the conditions of the contract. But as the contracting officer would not consider the plaintiff’s claim or make any adjustment, it was not necessary that the plaintiff should take an appeal. The breach of the contract was complete when the contracting officer paid no attention to the objections and protests of the plaintiff against the order and refused to make any adjustment. Moreover the conduct of the contracting officer in refusing to consider plaintiff’s repeated protests showed the uselessness “of expecting any change from him.”
*329 In the Case of Rust Engineering Company, 86 C. Cls. 461, 476, 477, the contracting officer required the contractor to furnish a different and more expensive tile than was required by the contract and this court said that he thus obligated the defendant to pay the excess costs of the special tile, and that this action constituted a change in the contract which “required an equitable adjustment in the contract price by reason of the increased cost.” Although the contract was exactly similar to the one in the case which we have before us and no appeal was taken from this order, the court held the defendant liable for the additional cost which plaintiff was required to pay for the tile demanded. The court said that this was not a dispute concerning a question of fact but one with reference to the construction of the contract, as the evidence showed without dispute that the tile was more expensive and presented the question as to whether under the provisions of the contract the plaintiff should be required to furnish a more expensive tile than the one desired and known to the trade and the parties at the time the contract was made. The court also held that the decision not being one of fact but a construction of the contract, no appeal was necessary. In the case before us the plaintiff was required to do work more costly in its operations than that required by the original contract. The two cases appear to be exactly parallel so far as the matters to which we have referred are concerned.
In the case of Callahan Construction Co. v. United States, 91 C. Cls. 538, 611, a somewhat similar contract case in which the plaintiff claimed to be entitled “to be paid for the extra expenses incurred by reason of being required to perform certain specified units of work in a manner different from and more expensive than that contemplated and specified in the contract and specifications,” the court said:
Where an instrument, especially one of such character as is involved in this suit, is drafted and prepared entirely by one party thereto, and is specific in its detailed requirements, subsequent doubts as to the meaning and applicability of the language and provisions thereof, to definite facts, conditions, situations, and circumstances should not be interpreted and construed in favor of the party who drafted and prepared it, but, on the con *330 trary, in such cases the provisions of such instrument should, in case of doubt and in such circumstances, be interpreted more favorably to the other party who did not and could not, in the circumstances, have anything to say as to the language and provisions of the instrument as prepared.
We do not think any doubt arises in the case but if there be any, we think that in fairness, justice, and the manifest understanding of the parties the rule laid down above would be applicable.
No finding is made that the decision of the contracting officer that the additional work should be paid for at the contract price was arbitrary or capricious and this is presented as one of the reasons why his decision should be held final. We had no occasion to make such a finding. On the contrary, construing the language used by the officer in his order as a matter of law, we hold that he was not deciding a fact but merely issuing an order that the contract rates be applied to the extra work done probably in the belief that the contract authorized him so to do. This being merely his opinion, on the construction of the contract, could hardly be held to be arbitrary or capricious. It was rather a mistake in judgment, but in any event he had no authority to construe the contract.
For the reasons stated, our conclusions are:
1. That the defendant made no adjustment of plaintiff’s claim and thereby breached the contract;
2. That the determination of what is an equitable adjustment is one of law and the contracting officer who could only pass on questions of fact had no authority to decide it;
3. That the plain meaning of the language used by the contracting officer in his order that “Payment for additional yardage * * * will be made at contract price per cubic yard” was that the contract price applied to the additional work, and that this was not in any sense a decision upon a fact but it was in effect a conclusion of law;
4. That the defendant having breached the contract by the refusal of the contracting officer to make any adjustment, the plaintiff could bring suit without taking any appeal, as the provisions for appeal applied only to the decisions of the *331 contracting officer on questions of fact. Moreover there was no adjustment from which to take an appeal.
What we have said above shows that an implied contract arose to pay the plaintiff the reasonable value of the extra work so performed. The defendant, however, objects to this conclusion and says that the plaintiff has sustained no damage because it has only paid the subcontractor at the contract rate of 14.43 cents per cubic yard which has been paid to plaintiff by defendant and that “The agreement between plaintiff and the subcontractor provided that in the event that plaintiff was unsuccessful in its claim against the United States for compensation over and above the rate of 14.43 cents per cubic yard for the material so hauled by the subcontractor, the subcontractor would receive no more than 14.43 cents per cubic yard, but that if the claim was allowed the subcontractor would receive more than 14.43 cents per cubic yard,” (see finding 10), that by reason of this agreement the plaintiff has sustained no damage and is not entitled to recover anything above the contract price for the extra work done.
We do not think that the agreement between plaintiff and its subcontractor is any defense. The defendant’s liability was contractual. ■ Its implied agreement was to pay the reasonable value of the extra work and if the subcontractor had agreed with plaintiff to do the work for nothing we do not think it would have invalidated this agreement. Certainly it would not have followed that the plaintiff could get nothing for this work from the defendant. The implied contract between defendant and plaintiff and the contract between plaintiff and the subcontractor are two entirely separate contracts, and in our opinion the latter had no effect on the obligations of the former.
At the time the change order was made, the plaintiff protested against it and notified the contracting officer it would ask for additional pay; and when it was paid at only the contract rate, it again protested and filed an itemized claim for additional work with the contracting officer amounting to $16,952.79 (see finding 12) for which it now asks judgment. We do not think the plaintiff is entitled to recover for Items E and F set out in finding 12 but hold that it is entitled to *332 recover for Items A and D which are for the extra work required. The charges in this bill are not made up by the number of cubic yards moved but in accordance with the value of the use of equipment used by the subcontractor in completing the work and the defendant is given credit for the payment which it made on the yardage removed. There is no dispute between the parties as to the time required by the subcontractor for doing the work described in Items A and D and we find the value stated in the bill to have been reasonable and fair also that ten percent in addition for the use of tools and supervision was a reasonable and customary charge. The value of the subcontractor’s work and equipment included in Item A was $14,348.25, under Item D $4,390.45, making a total of $18,738.70; 10% on this would amount to $1,873.87 and added to the value of the work makes a total of $20,612.57. From this should be deducted the $6,622.65 which defendant paid thereon, leaving a balance of $13,989.92 for which the plaintiff is entitled to judgment.
It is so ordered.
Whaley, Chief Justice, concurs.