FRIEDMAN and another, Respondents, vs. INSURANCE COMPANY OF NORTH AMERICA, Appellant.

*June 3—June 26, 1958.*

For the appellant there were briefs by *Clark, Rankin, Nash, Emmerling & Spindler* of Manitowoc, and oral argument by *John W. Emmerling*.

For the respondents there was a brief by *Muchin & Muchin* of Manitowoc, and oral argument by *Jacob Muchin*.

HALLOWS, J. The appellant does not deny the existence of a windstorm but does question the cause of the damage to the tractor-trailer. There are two basic questions involved: (1) The interpretation of the insuring clauses of the policy, and (2) whether there is any credible evidence to support the jury's finding that the damage to the tractor and trailer was caused by the windstorm. The insuring clauses of the policy provide:

"Coverage A—Comprehensive Loss of or Damage to the Automobile Except by Collision or Upset: To pay for any direct and accidental loss of or damage to the automobile, hereinafter called loss, excepting loss caused by collision of the automobile with another object or by upset of the automobile or by collision of the automobile with a vehicle to which it is attached. Breakage of glass and loss caused by missiles, falling objects, fire, theft, explosion, earthquake, windstorm, hail, water, flood, vandalism, riot or civil commotion shall not be deemed loss caused by collision or upset."

"Coverage E—Combined Additional Coverage, Including Malicious Mischief and Vandalism: To pay for direct and accidental loss óf or damage to the automobile, hereinafter called loss, caused by windstorm, hail, earthquake, explosion, riot or civil commotion, the forced landing or falling of any aircraft or of its parts or equipment, flood or rising waters, external discharge or leakage of water except loss resulting from rain, snow or sleet, malicious mischief or vandalism, except that $25 shall be deducted from the amount of each determined loss resulting from malicious mischief or vandalism."

It was agreed at the pretrial the plaintiffs were suing under coverage E. As applied to this case, coverage E provides payment for direct and accidental damage to the automobile caused by windstorm. The word "direct" modifies "damage," not the verb "caused." Many cases herein cited and the briefs of counsel transpose the word "direct" from modifying "damage" to modify the verb "cause." We construe "direct loss and damage" to mean the immediate damage or loss as distinguished from consequential or remote damage. The verb "caused" is unmodified.

It is also to be noted that there is no express exception of upset in coverage E. The appellant argues that coverage E is included and therefore modified by coverage A because of the insertion of "inc." in the policy where the premium for such coverage should be inserted. We construe this insertion to mean that the coverage of E was included in the premium for coverage of A. If the coverage E was identical with or included in coverage A there was no purpose in the appellant inserting "inc." This is of no consequence here as we will adopt the appellant's view for the purpose of construing coverage A.

The first sentence of coverage A as applied to this case provides payment for *any* direct and accidental damage to the automobile except loss caused by upset. In this sentence the perils insured against are not enumerated and the word "cause" is not used in reference to the perils insured against. These omissions would naturally follow from the use of the word "any" modifying "direct and accidental loss of or damage." The exception of an upset is restricted to loss caused thereby. Again "cause" is not defined or modified and no place in the policy is "upset" defined. The second sentence of coverage A modifies the collision and upset exclusion to the effect that loss caused by windstorm "shall not be deemed loss caused by collision or upset." This language must have some purpose and meaning. The listed

perils in this modifying sentence are those which would be expected to cause either a collision or an upset but none of them are ordinarily the result of the negligence of man. We construe this language to mean that if an enumerated peril in this sentence causes direct loss of or damage to the automobile, including its overturn, such damage shall not be deemed a loss caused by upset. If a windstorm causes an automobile to turn over the direct loss is from the windstorm, not the upset. We cannot interpret this language to mean if a windstorm turned over a parked automobile on a street that the damage to the automobile was caused by the upset and not the windstorm. Likewise, if an automobile was being driven down a straight road and a windstorm blew it off the road and turned it over it could not be successfully claimed the damage was caused by the upset. In both of these cases the upset was caused by the windstorm. In the instant case the tractor and trailer were going around a corner. Suppose that neither the centrifugal force nor the wind alone was sufficient to overturn the trailer and tractor but the combination of the two forces did result in the damage. Under such circumstances what is the meaning of the words "direct damage caused by windstorm" in the policy?

We do not believe this is a case of sequence of causes as urged by the appellant, *i.e.,* the wind caused the upset and then the upset caused the damage and therefore since coverage E is included in coverage A the direct damage was from the upset and is excluded from coverage. This argument is based on three assumptions: (1) That there was no damage from the wind to the automobile before it turned over, which is correct; (2) every turnover of an automobile is an upset within the meaning of the policy, and (3) damage connected with turnover is excluded as damage caused by an upset under coverage A. We cannot agree with assumptions 2 and 3. Coverage A expressly states loss caused by

windstorm shall not be deemed loss caused by upset. Unless the wind caused the upset there would be no purpose or meaning to the second sentence in coverage A. Rather than a limitation on the cause by windstorm or the other perils listed such language enlarges the concept of cause by those perils and excludes from the exclusion of upset those types of so-called upsets caused by such named perils.

Decisions in other states are apparently in conflict. Each case must be analyzed on its facts and in reference to the particular provisions of the policy involved. In *Clark v. Fidelity & Guaranty Fire Corp.* (1943), 39 N. Y. Supp. (2d) 377, the wind started a parked car down a slight hill and finally the automobile went off the road and hit a tree. The court held the damage to the car was caused by the collision and was within the exclusion of a policy similar to the one in the instant case. The court commented the wind may have been no aerial lullaby but it fell far short of qualifying as a windstorm. This case would support the appellant's argument if there had been a windstorm which had blown the auto into the tree. In *Matthews v. Shelby Mut. Plate Glass & Casualty Co.* (1939), 31 Ohio Law Abs. 294, 46 N. E. (2d) 473, cited by the appellant, the policy contained comprehensive coverage A, as in this case, but requiring the damage to be directly caused by windstorm. The auto was parked with the brakes set. After the occurrence of a windstorm the car was found half a mile away down a long hill against a tent cottage and a tree. The court held the damage was caused by collision and not directly caused by windstorm. Here there was a failure of proof as to the windstorm. The court noted that the provision (similar to the second sentence in coverage A in the instant case) creating certain exceptions from loss caused by collision or upset provided that the damage in such excepted instances must be caused directly by the hazard excepted.

The other cases cited by the appellant involving windstorm but excluding water are not in point. The language of the policies involved so far as the facts show does not contain the limitation on the exclusions, *i.e.*, that loss ·caused by windstorm shall not be deemed a loss caused by the excluded perils. See *Niagara Fire Ins. Co. v. Muhle* (8th Cir. 1953), 208 Fed. (2d) 191; *Wootton Hotel Corp. v. Northern Assur. Co.* (D. C. Pa. 1944), 57 Fed. Supp. 112, affirmed (3d Cir. 1946), 155 Fed. (2d) 988; *Newark Trust Co. v. Agricultural Ins. Co.* (3d Cir. 1916), 237 Fed. 788; *National Fire Ins. Co. v. Crutchfield* (1914), 160 Ky. 802, 170 S. W. 187, L. R. A. 1915 B 1094.

In the *Niagara Case* the policy provided coverage for damage by windstorm and excluded loss caused directly or indirectly by floodwater whether driven by wind or not. In the *Wootton Hotel Corp. Case* the policy excluded loss directly or indirectly caused by high water whether driven by wind or not. Similarly in the *Newark Trust Co. Case* loss occasioned by high water whether driven by wind or not was excluded. In the *Crutchfield Case* loss caused directly or indirectly by flood was excluded.

In *Gerhard v. Travelers Fire Ins. Co.* (1945), 246 Wis. 625, 628, 18 N. W. (2d) 336, the assured's cottage on the east shore of Green Bay was damaged by ice blown against it by the force of the wind. While it was pointed out that the policy did not expressly exclude coverage for damage caused by ice we said: "Contention that the cottage was not injured by the direct force of the wind is without merit." The appellant argues that this case probably would not have been decided the same way if the damage caused by ice had been expressly excluded in the policy. This argument assumes the question to be decided, namely: Was the upset caused by the windstorm excluded under this policy? The language of the exclusion in the instant case as to upset is

modified to the extent that damage caused by windstorm shall not be deemed damage by upset. This can only mean that such damage as is caused by an overturn of the car, which would be described as an upset, is not excluded if the upset is caused by a windstorm. Any other interpretation would be unreasonable and unrealistic. The appellant's contention amounts to saying a loss caused by upset shall not be deemed to be a loss caused by windstorm. Under coverage E, which does not exclude upset, the *Gerhard Case* is directly in point and we believe it in point also on coverage A.

In *Guenther v. American Indemnity Co.* (1945), 246 Wis. 478, 479, 17 N. W. (2d) 570, this court held where an automobile was struck by a piece of ice and the driver lost control of the auto and collided with an embankment, the insurer was liable for the damage caused by the ice striking the car and also for the damage from hitting the embankment. The policy provided payment for any damage to the automobile rather than, as in this case, any direct and accidental damage and excluded "all other loss, the primary and immediate cause of which is a collision" as distinguished from the instant case excluding loss caused by collision and the modification that loss caused by windstorm shall not be deemed to be a loss caused by collision. We said the damage resulting from hitting the embankment was not excluded under the clause excluding loss, the primary and immediate cause of which was a collision. If damage to an automobile resulting from hitting an embankment is not loss primarily and immediately caused by a collision then damage to an automobile resulting from overturning and hitting the ground is not primarily and immediately caused by an upset when both the so-called collision and upset are caused by a windstorm or other perils insured against. Both the *Guenther*

and *Gerhard Cases* are in point in their reasoning on causation when applied to the coverages of this policy. There are other cases sustaining our construction of the wording of the policy. Where a windstorm drove a car off the road against a telephone post, thereby damaging it, the court in *Fireman's Ins. Co. v. Weatherman* (Tex. Civ. App. 1946), 193 S. W. (2d) 247, held the damage caused by windstorm and not by collision under language similar to coverage A excepting the word "loss" was not qualified by the word "direct." This is immaterial on the facts as the damage was direct and the court held the windstorm was the sole, inducing, and efficient cause of the collision. The language of the policy did not require the windstorm to be the sole, inducing, and efficient cause but merely the cause.

Another case in point is *Farmers Ins. Exchange v. Wallace* (Tex. Civ. App. 1955), 275 S. W. (2d) 864. In this case the policy provided for any direct and accidental loss of or damage to the automobile under language similar to coverage A. The wind blew the auto over while it was being driven on a public highway. The court said direct loss meant immediate or proximate as distinguished from remote. The court reasoned the damage was due to the windstorm because it was the force of the wind, which was the actual and dominant peril, causing damage to the automobile. The insured peril set the other causes in motion, which in unbroken sequence and connection produced the final result. The windstorm was, therefore, regarded as the direct and proximate cause of the entire damage.

If we consider the damage to the tractor-trailer in the instant case as being caused by two forces, one insured against and the other not insured, we have the problem of concurrent causes, both contributing to the damage rather than acting in sequence. What is the application of the construction of the policy under such a situation? Under cov-

erage E the damage must be caused by the windstorm. Under coverage A the damage must not be caused by an upset. A windstorm can pick up a car and turn it over or a car can roll over because of centrifugal force. A car because of negligent driving can collide with a tree, but if the various forces do not come to rest, the car could roll over and then it would be an upset. An automobile tire blowing out at high speed could cause an upset. The causes of upsets are many and varied. The appellant under coverage A would exclude all and every cause of an upset under the undefined term "upset" when such causes simultaneously combine with wind in any degree to cause damage. The appellant ignores the provision that loss caused by windstorm shall not be loss caused by upset. This language operates as an exception to the exclusion of collision and upset. A windstorm need not be the sole cause of the damage under a policy extending coverage to direct loss by windstorm. In *Kudella v. Newark Ins. Co.* (1958), 3 Wis. (2d) 599, 89 N. W. (2d) 219, we cited the applicable rule to the effect that the wind must be the proximate and not the remote cause of the damage where the policy required it to be the direct cause of the loss. If the windstorm insured against is the proximate cause of the loss, it need not be the sole cause and generally it is sufficient if it is the efficient cause although other causes contributed thereto unless the contributing cause is expressly excluded in the policy. In that case we held the evidence insufficient to prove the damage to the house was caused by windstorm.

Other courts considering concurrent cases under similar circumstances have held it sufficient if the insured peril was the efficient and proximate cause. See *Shirey v. Tri-State Ins. Co.* (Okla. 1954), 274 Pac. (2d) 386. (This case disagrees with the *Clark* and the *Matthews Cases* and cites and approves the *Gerhard Case.*) *Providence Washington Ins.*

*Co. v. Cooper* (Tex. Civ. App. 1949), 223 S. W. (2d) 329; *Evana Plantation v. Yorkshire Ins. Co.* (1952), 214 Miss. 321, 58 So. (2d) 797; 5 Appleman, Insurance Law and Practice, p. 287, sec. 3142. Much of the conflict in the decisions of the various states is due to the variation in the language of the policies or in the findings of the juries on the facts. Excellent annotations are found in 126 A. L. R. 707, and in 166 A. L. R. 380.

As a matter of construction of the language of the policy we cannot hold, in view of the qualification of the exclusion clause of collisions and upsets, that damage caused by all collisions and upsets is excluded. If a windstorm, one of the perils listed in the qualification sentence, caused the damage even though it may not be the dominant or sole cause, such cause shall not be deemed a loss caused by upset. Consequently, the centrifugal force playing on the tractor-trailer when it went around the corner was not an excepted peril when combined with the force of the windstorm. There is no evidence to show that the centrifugal force alone caused the upset. Centrifugal force is a natural force inherent in the situation whenever an automobile is driven around a corner. A windstorm finds its objects as they exist at the moment. Some objects are solidly secured to the earth, others only have the force of gravity holding them on the surface of the earth, and some objects may be in a status with gravity and centrifugal forces not caused by human negligence acting upon them when a windstorm occurs. The fact that the windstorm could not have produced the result without the aid of the centrifugal force is only another way of saying the wind must be the sole cause or dominant cause. If the appellant wanted to qualify causation of the wind in terms of degrees or in percentages of contribution it should have done so or it would have to qualify "upset" by adding "however caused" and leaving out the second sentence of coverage A;

as some policies do. Analyzing all the language of the policy we do not find where the insurer has excluded damage caused by upset where the upset was caused by a windstorm either acting alone or simultaneously acting with centrifugal force.

The instructions on causation of the trial court to the jury were more favorable to the appellant than it was entitled to receive. The instructions required the jury to find the windstorm was the efficient and predominating cause of the damage although the verdict called for a finding that the damage to the tractor and trailer was directly caused by the windstorm. Such requirements were not prejudicial to the appellant. The appellant contends that there was no credible evidence to support the jury's finding that the wind directly caused the damage. Upon reviewing the evidence we conclude there was credible evidence upon which the jury could find the windstorm caused the direct loss suffered by the plaintiffs as required by the policy.

The trial court did not err in permitting the plaintiffs' expert to testify, as argued by the appellant. It is true the hypothetical question was very long and included some minor inaccuracies of the evidence. Summed up in a few words, the expert testified that he believed the wind turned the truck over. There were sufficient facts in evidence to form a basis for his opinion. Appellant's objection assumes the force of the wind had to be the sole or at least 51 per cent of the cause or the answer was incredible. On cross-examination counsel brought out the various assumptions and explanations of the expert's answer. It was for the jury to decide what weight to give to the expert's answer under the circumstances.

It would be helpful to the court in the future in cases that involve construction of policies or other written instruments if the instrument to be construed is either set out in full or a copy attached to the appendix, or if such instrument is too long to be set out verbatim in the appendix then the para-

graph or paragraphs containing the words to be construed should be set out in full. While abridgment of such paragraphs is permissible and is sometimes desirable in the brief, the unabridged portions of the contract to be construed should be set forth in the appendix.

*By the Court.*—Judgment affirmed.