**Clifford J. HUGHES, Plaintiff-Respondent,**

v.

**GREAT AMERICAN INSURANCE COMPANY, Defendant-Appellant.**

**No. 24810.**

Kansas City Court of Appeals.

Missouri.

April 1, 1968.

Judgment affirmed in part and reversed in part.

John R. Gibson, Robert M. Kroenert, Kansas City, Morrison, Hecker, Cozad, Morrison & Curtis, Kansas City, of counsel, for appellant.

Donald E. Willson, Christian R. Mentrup, Kansas City, Madden & Willson, Kansas City, of counsel, for respondent.

R. KENNETH ELLIOTT, Special Judge.

Plaintiff decided to sell his 1962 Pontiac and placed an advertisement in the newspaper. In response to this advertisement plaintiff received several offers at or near his asking price of $2,000. On Monday, April 20, 1964, one Ray Benson called plaintiff on the telephone, made inquiry about the automobile, and arranged an appointment to see it. The following day Benson appeared at plaintiff's home, looked the Pontiac over, drove it, and offered plaintiff $1,800 cash for it. Plaintiff accepted his offer because higher offers involved financing, which would require arrangement by plaintiff. Benson informed plaintiff that he was from California and that he would call his wife for the purchase money, and that he was planning to drive the automobile back to California. Benson gave plaintiff $50.00 cash as down payment, but plaintiff returned it to him because plaintiff said he was willing to wait for a cashier's check, which Benson said he was going to produce, and further because Benson looked like an honest man.

Arrangements were made for Benson to pick up the automobile on the following Thursday. On Thursday evening Benson informed plaintiff by telephone that he was unable to come to plaintiff's house that evening and that he would pick up the car the following evening. On that Thursday evening, April 23, 1964, plaintiff went to a notary public, signed his name to the certificate of title in blank, in the presence of the notary public.

The next evening, Friday, April 24, 1964, Benson arrived, presented a cashier's check drawn on a California bank in the amount of $1,800 payable to Benson. Benson endorsed the check to plaintiff with plaintiff's permission, and plaintiff thereupon gave Benson the certificate of title signed by plaintiff the day before, and then Benson wrote his name in the certificate of title in the presence of plaintiff. Plaintiff also signed a blank bill of sale form provided by Benson and wrote in the actual amount of the sale, because plaintiff thought Benson might try to involve plaintiff in some income tax transaction of Benson's. Plaintiff gave Benson the keys to the Pontiac, and Benson drove away with the automobile, keys, and certificate of title.

Plaintiff testified that his intention was to give Benson the full title to, and full possession of the automobile, and that he intended that Benson drive away with the automobile and title on the night Benson gave him the cashier's check.

About a week later, plaintiff was greeted by an agent of the Federal Bureau of Investigation, who revealed the news to plaintiff that the cashier's check was no good, and the check was subsequently returned to plaintiff and was introduced in evidence as plaintiff's Exhibit 4. Plaintiff reported the occurrence to defendant and requested payment under the provisions of his insurance policy, which will be set out later. Defendant refused payment. Thereafter plaintiff instituted this action against defendant, praying judgment for actual damages in the amount of $1,800; for vexatious refusal to pay in the sum of $180.00, and for a reasonable attorney's fee. A jury was waived and the case was tried before the court. The only testimony came from the plaintiff.

The trial court rendered judgment in favor of the plaintiff for the sum of $1,800 plus the sum of $180.00 as a penalty for vexatious refusal to pay, and the sum of $650.00 as a reasonable attorney's fee, a total judgment of $2,630.00. The trial court overruled defendant's motion for judgment and alternative motion for new trial, and defendant appealed.

It is admitted that defendant issued an automobile policy to plaintiff which was in effect on April 24, 1964, the date of delivery of the automobile by plaintiff to Benson. The pertinent provisions in said policy are set forth as follows:

"Great American Insurance Company * * * Agrees with the insured, * *

"PART III—PHYSICAL DAMAGE COVERAGE D (1)—Comprehensive (excluding Collision);

(1) To pay for loss caused other than by collision to the owned automobile or to a non-owned automobile. For the purpose of this coverage, breakage of glass and loss caused by missiles, falling objects, fire, theft or larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion, or colliding with a bird or animal, shall not be deemed to be loss caused by collision.

COVERAGE G—Theft. To pay for loss to the owned automobile or to a non-owned automobile caused by theft or larceny.

" 'LOSS' means direct and accidental loss of or damage to (a) the automobile, including its equipment or (b) other insured property; 'collision' means collision of an automobile covered by this policy with another object or with a vehicle to which it is attached or by upset of such automobile."

■ Appellant, in its brief, initially admits that the insurance contract covers a loss by theft and larceny under the comprehensive coverage provision, and cites Firemen's Fund Insurance Company v. Cramer, 178 So.2d 581, Fla.1965; Rich v. United Mutual Fire Insurance Company, 328 Mass. 133, 102 N.E.2d 431; Farmers Insurance Exchange v. Wallace, Tex.Civ. App., 275 S.W.2d 864; and Friedman v. Insurance Company of North America, 4 Wis.2d 641, 91 N.W.2d 328, 68 A.L.R.2d 1417, 1958. We agree with appellant's position that theft and larceny are covered under the comprehensive coverage clause. However, we do not agree with the appellant's apparent position that this coverage is limited to the itemized matters which are specified as not being deemed to be a loss

caused by collision. See Boenzle v. United States Fidelity & Guaranty Co., Mo.App., 258 S.W.2d 938, for a similar provision. In other words, we think the coverage involved is not limited to these particular words which specify "what collision is not."

■ It is true that a policy of insurance must be construed as a whole and that meaning be given to the various parts of it, if it is possible to do so. And, as our Supreme Court stated in Brugioni v. Maryland Casualty Company, Mo., 382 S.W. 2d 707:

"It is true as the defendants contend that it is the court's duty to interpret insurance contracts and enforce them as they are written and not to remake them. (citing cases) On the other hand, an insurance policy being a contract designed to furnish protection will, if reasonably possible, be interpreted so as to accomplish that object and not to defeat it, and, if terms of the contract are susceptible of two possible interpretations and there is room for construction, the provisions limiting or cutting down on the coverage of the policy, or avoiding liability therefor, will be construed most strongly against the insurer. (Citing cases.)"

■■ Further, where the language is unambiguous and clear, we are guided by Giokaris v. Kincaid, Mo., 331 S.W.2d 633, 86 A.L.R.2d 925:

"We have said the rules for construing insurance policies 'are well settled. The policy is a contract. Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but, in so far as open to different constructions, that most favorable to the insured must be adopted. * * * However, * * * the rule "does not authorize a perversion of language, or the exercise of inventive pow-

ers for the purpose of creating an ambiguity where none exists." ' Werndorff v. Missouri State Life Insurance Co., 318 Mo. 363, 1 S.W.2d 99, 57 A.L.R. 615. * * *."

Appellant urges that this case comes within the holding of Cox v. World Fire & Marine Insurance Co., Mo.App., 239 S.W.2d 538. Although the facts in the Cox case are similar in that the facts there, as here, involved the advertisement and sale of an automobile for a worthless forged check, there is a distinct difference between the insurance coverages in the Cox case and in the instant case. In Cox, even though a "comprehensive" policy was mentioned, the case was specifically decided on the basis of a theft loss, which read as follows: "Theft [broad form] loss or damage to the automobile caused by theft, larceny, robbery, or pilferage."

Appellant also cites the recent case of World Investment Co. v. Manchester Insurance & Indemnity Co., Mo. App., 380 S.W.2d 487, which case was also decided on the basis of the meaning of the words "theft or larceny." The court there stated that the grounds of the decision was based upon the meaning of the word "theft." It is evident that both the Cox case and the World Investment Company case were decided upon the specific basis of theft. We here, by virtue of the broad language of the comprehensive provision, are not so constricted. We are not involved, therefore, with the necessity of deciding, in view of the amendment of Section 560.156, RSMo 1959, V.A.M.S., whether the public understanding of the meaning of the terms of theft or larceny has been broadened by this statute. The language of the policy in question, "to pay for loss caused other than by collision * * *" is an umbrella broad enough to cover the acts appearing in the facts of the case at bar. As said in 45 C.J.S. Insurance § 791, " * * * the so-called comprehensive provision of a policy covers loss or damage caused by any risk or peril other than those expressly excluded or excepted from coverage * * *." See also 7 Am. Jur.2d Automobile Insurance, Section 74.

We do not have the issue of exclusionary clauses, which were involved in both Cox and World Investment Company. Our attention was neither directed to, nor have we found in the policy in issue, any such exclusions mentioned in the Cox and World cases relating to embezzlement, conversion, etc.

Appellant cites to us an excerpt from 5 Appleman, Insurance Law and Practice, § 3222, as follows:

"Most companies have now adopted the policy of writing what is termed 'comprehensive' coverage, which is for the purpose of including all property damage to an automobile. * * * It includes all of the older coverages, * * * such as fire, theft, damage caused from force of the elements, and, in addition, many new losses never before contemplated by any coverage whatever. It is a simple and convenient form of insurance, in that it eliminates any necessity of determining overlapping of fire and theft coverages. * * * Most companies, however, have now adopted the liberal plan in such close cases of paying the full extent of the loss under comprehensive."

We agree that the term "comprehensive coverage" not only covers the older coverages, well recognized in insurance contracts, but includes many new losses never before contemplated. The language of the insurance provision involved herein fits that description. If defendant did not wish to provide such coverage it should not have used the language involved, or, as was stated in the World case, "If defendant desired an exclusion clause * * * it should have written one into its policy. We certainly have no authority to rewrite defendant's contract for it."

Appellant further argues that there was no direct and accidental loss of the automobile. Certainly the loss of respondent's automobile was occasioned by the chicanery and planned course of conduct on the part of Benson. The evidence demonstrates Benson's Monday-through-Friday technique culminating in a bogus check utilized to gain possession and a certificate of title to said automobile. From the evidence adduced from respondent it appeared that respondent was told by an FBI agent that Benson was a convict. A more direct loss would be difficult to achieve.

As to appellant's claim that the loss was not accidental, we find that "accidental" is defined by Webster's New International Dictionary, 2nd Edition, as "happening by chance or unexpectedly," and by Black's Law Dictionary as "happening by chance or unexpectedly; taking place not according to usual course of things; caused; fortuitous." It is apparent that as far as the respondent is concerned this occurrence happened by chance and was unexpected by respondent. It is obvious that respondent would not have voluntarily accepted a forged check.

Appellant cites Gasperino v. Prudential Insurance Company of America, Mo.App., 107 S.W.2d 819, and Eagan v. Prudential Insurance Company of America, Mo.App., 107 S.W.2d 133, along with Great American Indemnity Company v. Yoder, D.C. Mun.App., 131 A.2d 401. We do not find that these cases aid appellant.

Appellant lastly complains of the trial court's action in awarding a ten per cent penalty and attorney's fee on the grounds that there was no vexatious delay as a substantial legal question existed. In Yankoff v. Allied Mutual Insurance Company, Mo. App., 289 S.W.2d 471, cited by respondent, it was held that:

" * * * The rule is that while affirmative proof is not required to show vexatious refusal, the penalty should not be inflicted unless the evidence and circumstances show such refusal was willful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial. Merely because the judgment after trial is adverse to defendant's contention is not reason for inflicting the penalty * * * "

In the instant case we find no facts such as existed in the Yankoff case, where the insurance company did not offer the exact amount of loss determined by its own appraisers. The instant case involved the legal conclusion of the meaning of the insurance provision as to comprehensive coverage. Although Boenzle v. United States Fidelity & Guaranty Co., supra, does decide a meaning of the word "collision," we have found no Missouri cases construing the effect of listing what does not constitute a collision when the word "collision" is the exception to the comprehensive coverage provision. We find in Hammontree v. Central Mutual Insurance Company, Mo. App., 385 S.W.2d 661, the following instructive passage:

"The controlling legal principles are well-settled. V.A.M.S. Section 375.420 is highly penal and must be strictly construed. Before the trier of the facts may consider the issue of vexatious refusal to pay, there must be evidence from which it reasonably may be found that the insurer's refusal to pay was willful and without reasonable cause as the facts would have appeared to a reasonable and prudent man prior to trial. And merely because the verdict or judgment upon trial may be adverse to the insurer is no reason for inflicting the penalty.

"Since an insurer has the right to entertain an honest difference of opinion as to its liability, it is clear that, where there is an open question of law or an issue of fact determinative of its liability, an insurer, acting in good faith, may insist upon a judicial determination of such question or issue without being penalized. 'It is only when it persists in

its refusal to pay * * * after it is aware that it has no meritorious defense that it becomes subject to penalties for vexatious delay.' The statute never should be invoked to intimidate a good faith defense. (Citing cases)"

Respondent cites Dixon v. Business Men's Assurance Company of America, Mo., 365 Mo. 580, 285 S.W.2d 619, in support of his contention that defendant was without reasonable or probable cause in defending this action. We note that in the Dixon case this question turned on the validity of a release obtained and the facts surrounding it. We have no such factual dispute here.

 Even though the case may have involved an open question of law, the penalty will not be precluded if there is evidence of the vexatious attitude by insurer. Still v. Travelers Indemnity Company, Mo., 374 S.W.2d 95. However, we find no evidence or reasonable basis for such an imposition in this case. The appellant may have a clearer concept of its liability after receipt of this decision, but we must consider the situation it faced before trial. Pfingsten v. Franklin Life Insurance Co., Mo., 330 S.W.2d 806.

We hold that appellant was not without reasonable or probable cause in taking the position that it had a meritorious legal defense.

The judgment of the trial court granting respondent judgment against appellant in the sum of $1,800 actual damages is affirmed, and that portion granting respondent the sum of $180.00 as a ten per cent penalty and the sum of $650.00 as a reasonable attorney's fee is reversed.

HOWARD, P. J., and CROSS, J., concur.

MORGAN, J., not participating because not a member of the Court when the cause was submitted.