UNITED STATES for the Use of R. W. VAUGHT CO., a Corp. and R. W. Vaught Co., a Corp., Appellees,

v.

F. D. RICH CO., INC., a Corp., American Surety Co. of New York, a Corp., United States Fidelity & Guaranty Co., a Corp. and General Reinsurance Corp., a Corp., Appellants.

No. 19840.

United States Court of Appeals, Eighth Circuit.

March 9, 1971.

Rehearing En Banc Denied and Rehearing Denied March 30, 1971.

John A. Biersmith, Dana B. Badgerow, Kansas City, Mo., and Lawrence Gochberg, Stanford, Conn., for appellants; Biersmith & Walsh, Kansas City, Mo., of counsel.

F. Philip Kirwan, Robert A. Goodman, Kansas City, Mo., Morgan M. Moulder, Camdenton, Mo., for appellees; Margolin & Kirwan, Kansas City, Mo., of counsel.

Before VAN OOSTERHOUT and BRIGHT, Circuit Judges, and NEVILLE, District Judge.

BRIGHT, Circuit Judge.

R. W. Vaught Company (Vaught), individually and as use plaintiff, brought the instant action under the Miller Act, 40 U.S.C. § 270a et seq., for recovery of unpaid amounts claimed to be due it by the prime contractor, F. D. Rich Company, Inc. (Rich), and its sureties [1] for labor and materials furnished as a subcontractor on a government project under two separate subcontracts. The district court, sitting without a jury, rendered judgment favorable to the use plaintiff which provided for the following: Judgment against all defendants for the sum of $152,268.67, representing the amounts due and owing the subcontractor by the prime contractor on the two subcontracts; judgment against all defendants for the $43,688.87 for extra work performed by the subcontractor apart from his obligations under the subcontracts; judgment against all defendants for interest at the rate of six per cent per annum on these amounts from the date of demand for payment; judgment against the sureties only for ten per cent of the principal amounts, plus reasonable attorney's fees, representing a penalty for vexatious refusal to pay claims pursuant to Missouri law (Mo.Ann.Stat. § 375.-420).

In entering its judgment, the district court rejected prime contractor Rich's counterclaim for offsetting damages against the subcontractor flowing from the latter's alleged breach of contract for failing to timely perform its work, and for failure to pay its material and labor claimants. Defendants Rich and its sureties prosecute this appeal. We affirm the judgment of the trial court with modification, and reverse the penalty for vexatious refusal to pay assessed against the surety companies.

The record here is extensive and we deem it unnecessary to set forth the evidence in great detail, but restate only those facts relevant to, the legal issues presented on this appeal. Prime contractor Rich agreed with the United States, acting through its Army Corps of Engineers, to construct a complex of ten buildings at Fort Leonard Wood, Missouri, nine to be occupied by military

---

1. Defendant-appellants American Surety Company of New York, United States Fidelity & Guaranty Company and General Reinsurance Corporation executed performance and payment bonds as sureties for prime contractor Rich, as required under the Miller Act, 40 U.S.C. § 270a.

personnel and one to house a plant to provide heating for all buildings. The prime contract initially provided Rich 720 days after January 25, 1963, to complete the work. Later, this time was extended an additional 50 days. Rich completed the work under the prime contract on March 4, 1965, a date within the allowable 770 contract days for performance.

Vaught, a mechanical contractor specializing in plumbing and heating installations, contracted with Rich to install the plumbing, heating and air conditioning for a contract price of $1,100,000 and, under a separate subcontract, agreed to do certain sheet metal work for a contract price of $46,000. Following completion of the subcontract work and acceptance thereof by the government, prime contractor Rich refused to pay Vaught the ten per cent "retainage" on each of the subcontracts and the last "estimate" on the larger subcontract. The prime contractor and its sureties refused payment to Vaught on the ground that the subcontractor had not furnished and paid for all material and labor which it had agreed to furnish for the contract price, and that Vaught's delays in performance of the mechanical subcontract had resulted in damages to the prime contractor in a sum exceeding the unpaid balance on the contracts. The principal dispute on this appeal concerns Vaught's performance of its obligations under the mechanical subcontract, specifically whether that performance justified the defendants' refusal to pay sums claimed due Vaught under the subcontracts. Rich specifically relies upon Article XXIV of its subcontracts with Vaught which authorizes the prime contractor to withhold funds otherwise due a subcontractor and apply them toward payment of damages sustained at the hands of a subcontractor.[2]

The appellants raise the following contentions on this appeal: (1) The district court failed to make sufficient findings of fact as required by Fed.R.Civ.P. 52(a) to furnish an appropriate basis for this court to properly review the issues presented on appeal; (2) the district court erred in concluding that defendant Rich had failed to establish that Vaught's failure to timely perform the mechanical subcontract delayed completion of the project to Rich's damage; (3) the district court erred in awarding the plaintiff the full amount remaining on its contract price with Rich as the balance due when Vaught's own creditor-material suppliers and subcontractors remained unpaid and were asserting Miller Act claims against the prime contractor; (4) the district court erred in allowing additional sums for "extra work" since Vaught failed to comply with the procedures set forth in the subcontract to establish entitlement to extra compensation; (5) the district court erred in assessing damages by way of a penalty, including attorney's fees, against the defendants-sureties for vexatious refusal to pay under Missouri law; and (6) the district court erred in awarding Vaught prejudgment interest under Missouri law.

## I. ADEQUACY OF THE TRIAL COURT'S FINDINGS

 Appellant Rich asserts that the trial court failed to make the necessary findings to permit an adequate appellate review. Appellant specifically charges the findings relating to Vaught's alleged delay in performance were inadequate to sustain the trial court's conclusions of law. The trial judge made no separate findings, but instead incorporated them into his unreported memorandum opinion. Although the opinion does not elaborate or detail

2. This provision reads in part:
"[A] breach by the second party [subcontractor] of any contract, may at the option of the first party [prime contractor], be considered a breach of all contracts; and in that event the first party may terminate any or all of the

contracts so breached, or may withhold moneys due or to become due on any such contracts, and apply the same toward payment of any damages suffered on that or any other such contracts."

each subsidiary issue raised by defendant Rich in its claim for delay damages, the trial court clearly indicated the evidentiary basis for its decision on this issue. It recited, as an ultimate finding:

> the defendant has wholly failed to sustain the burden of proof on the affirmative defense of damage to the defendant by unreasonable delay.

Although more extensive findings are certainly helpful in a case as complex as this, the district court's memorandum opinion sufficiently outlines the basis and underlying grounds for its decision, which is all that is required. Christensen v. Great Plains Gas Company, 418 F.2d 995, 1000 (8th Cir. 1969); Freeman v. Gould Special School District, 405 F.2d 1153, 1156 (8th Cir.), cert. denied, 396 U.S. 843, 90 S.Ct. 61, 24 L.Ed. 2d 93 (1969); Manning v. Jones, 349 F.2d 992, 996 (8th Cir. 1965). See also, Glassman Construction Company v. United States for Use and Benefit of Clark-Fontana Paint Co., 421 F.2d 212 (4th Cir. 1970) (Miller Act case); Seligson v. Roth, 402 F.2d 883 (9th Cir. 1968). Appellant Rich, who presented the trial court with 156 proposed findings, misconstrues the requirements of Rule 52(a), Fed.R.Civ.P. The trial court need not make specific findings on all facts and evidentiary matters brought before it, but need find only the ultimate facts necessary to reach a decision in the case. Skelly Oil Co. v. Holloway, 171 F.2d 670, 673 (8th Cir. 1948). See generally, 5 Moore, Federal Practice ¶52.05[1] (2d ed. 1969).

## II. SUFFICIENCY OF SUBCONTRACTOR'S PERFORMANCE

█ In general, the provisions of the mechanical subcontract obligated Vaught to perform the work "in a prompt and diligent manner * * * and in such order as * * * [Rich] may from time to time direct." The contract further provided that performance must be made within "such time as not to delay the other trades and to insure completion of the general contract within the time fixed herein, the general contract time being of the essence of this contract." Prime contractor Rich, during the progress of the job, utilized a computer to program the various stages of construction and submitted these computer programs or prints-outs to each subcontractor as a guide for the particular subcontractor's production schedule. Under this system, the prime contractor specified the time interval for each subcontractor to commence and complete various phases of construction, assigning each phase a date on which the subcontractor might commence his work, denoted as the "early start" date and a later date denoted as the "late start" date. The computerized program contained some built-in flexibility, but the late start date supposedly represented an absolute deadline for commencement of that particular activity.

Appellee Vaught sublet approximately eighty per cent of its mechanical work to other contractors. Vaught commenced performance on the mechanical subcontract in late March of 1963. During the progress of its work over the next two years, Vaught failed to meet the prime contractor's computerized work schedules in many areas of construction.

The area of work crucial to this litigation concerns the completion of the heating plant, for which the early computer print-outs established a completion date of July 26, 1964. Later information and adjustments fed into the computer produced a scheduled completion date for the heating plant of no later than October 8, 1964. Further information fed into the computer during the following month produced a print-out date of October 26, 1964, for completion of all mechanical work.

Vaught wrote Rich in July of 1964 that it "calculated" October 8, 1964, as the mechanical work completion date, the same date produced by the computer in April. However, Vaught finished five months later than the October date. The prime contractor then sought to

charge Vaught with delay damages for the latter's failure to comply with the construction program schedule as established by the computer. Vaught denied that it had specifically agreed to meet this schedule or that the schedule constituted any legally binding agreement between the parties. Since the prime contractor did not complete construction of the various buildings before the 1964–1965 winter months, its contract with the Corps of Engineers required it to furnish temporary heat within those buildings. Rich insisted that Vaught was obligated to provide the temporary heating service to these buildings at its own expense because Vaught had not met the computerized time schedule for completion of its part of the work. Vaught denied liability for providing temporary heating service, but supplied the service under protest, reserving the right to collect a reasonable charge therefor.

The subcontractor sought recovery for the following: $152,268.67, representing the balances unpaid under the mechanical subcontract and the sheet metal contract; $29,775.91 for the reasonable value of providing temporary heat services; $11,274.62 in additional compensation for hooking up and testing certain kitchen equipment which had been installed by another subcontractor; and $2,638.34 for adjusting the level of certain manhole covers which protruded substantially above ground level.

The trial court allowed these claims in full, as well as interest thereon, and awarded an additional sum of $15,226.87 as a ten per cent statutory penalty added to the balances unpaid under both subcontracts, plus reasonable attorney's fees of $49,550.51. No issue is raised concerning the computation of the unpaid subcontract balances. Neither does Rich challenge the reasonableness of the charge by Vaught for providing temporary heating services to the buildings during the 1964–1965 winter months.

The trial court rejected the prime contractor's contentions of damaging delay on the part of the subcontractor. With regard to the time-of-performance specified in the computer print-outs, the district court concluded that

> the evidence in this case clearly demonstrated that this electronic brain (located in Connecticut) received a great deal of bad information from the defendant's employees in Missouri.

The court characterized the computer's work completion dates, set without any consultation with the subcontractors, as "arbitrary". The court specifically found that the prime contractor and other subcontractors had failed to meet schedule completion dates on phases of work left to their respective responsibilities and this in turn affected Vaught's ability to commence certain phases of its operations as scheduled by the computer. The trial court could conclude that the computerized dates represented theoretical aspirations rather than practical contract requirements.

The record indicates that the government assessed no delay damages on the general contract, that the prime contractor fed erroneous data into the computer, that delays occurred in the progress of work which were attributable to the acts of the prime contractor and other subcontractors, that defendant Rich presented no competent proof that Vaught's delays contributed materially to delayed completion of the project, that Rich produced no competent evidence of damages resulting solely from Vaught's delay in performance, and that Vaught did not breach any specific provision of the subcontract relating to performance.

Testimony offered by a resident engineer of the Corps of Engineers on the project indicated usual requirements of eight months to a year to complete the mechanical subcontract work after the setting of the boilers into the heating plant building. In this case, Vaught set the boilers into the heating plant building in May of 1964. Rich does not seriously contend that Vaught, from a practical standpoint, could have set the boilers any earlier. Based on this evidence, completion approximately nine to ten

months later, as in this case, need not constitute an overly long time for performance.

Prime contractor Rich introduced no convincing evidence that Vaught had agreed in fact to any completion date earlier than that fixed by the general contract. Rich recognized that Vaught's "calculated" completion date of October 8, 1964, did not promise performance. Whether Vaught actually delayed performance of the mechanical subcontract, and whether that delay, if any, produced damage to Rich represent questions of fact to be resolved by the trier of fact. Appellants fail to demonstrate that these findings of the trial court were clearly erroneous. Accordingly, we sustain these determinations under the mandate of Rule 52 (a), Fed.R.Civ.P.

By sustaining the trial court's findings of no delay in completing the heating plant, we affirm the trial court's resolution of the controversy relating to payment for heat during the 1964–1965 winter months. The parties agree that the prime contractor contracted with the Corps of Engineers to furnish temporary heat. The parties further agree that Vaught did not assume this obligation under the mechanical subcontract. By failing to establish that Vaught's delays, if any, interfered with the prime contractor's ability to earlier complete the project, Rich likewise fails in its defense that Vaught must assume the heating costs in question as an item of damages for breach of contract.

## III. SUBCONTRACTOR'S FAILURE TO PAY CREDITORS

Several parties, including two intervenors in the district court, filed Miller Act claims pursuant to 40 U.S.C. § 270b against Rich based upon labor and materials allegedly supplied to Vaught in the performance of the mechanical subcontract. The total amount of the claims filed exceed Vaught's recovery as allowed by the district court. Rich contends that the existence of these claims bars Vaught's right to recover in this action. The subcontract gives the prime contractor a right to withhold payment from the subcontractor. Article XXI of the subcontract, as pertinent, reads:

\* \* \* prior to final payment, the second party [subcontractor], if demanded, shall deliver to the first party [prime contractor] \* \* \* *duly executed releases* of the first party from each of the persons to whom obligations were incurred [by the second party] \* \* \*.

PROVIDED, further, that *no payment shall be considered to be due or payable to the second party under this contract so long as any obligations incurred by the second party in connection with or as a result of the performance of this contract are unpaid* \* \* \*. [T]hat if in violation hereof, there shall be any lien, or other claim for moneys due or to become due for which if established, the first party might be liable, and which would be chargeable to the second party, second party shall immediately satisfy or bond the same, or the first party shall have the right to bond said lien or claim or otherwise discharge the same and *to retain out of any payment then due or thereafter to become due, an amount sufficient to completely indemnify it against such lien or other claim* \* \* \*.

In the event that the first party or its surety companies or the owner is sued by a third party, including that not limited to material suppliers, subcontractors or employees of second party, because of a dispute between such third party and the second party, the second party agrees *to hold the first party harmless from all liability, loss, costs or damages, including reasonable attorneys fees, disbursements and other expenses of defending such suit*. (Appellants' emphasis added.) These provisions for bonding of separate claims of creditors must be construed in the light of Article XXIII, which gives the prime contractor the right to demand, subject to its payment of the premium, that the subcontractor provide a "surety company performance and pay-

ment bond." In this case, the prime contractor demanded and obtained a performance and payment bond executed by Vaught as principal and Federal Insurance Company as surety. Pertinent provisions obligated Vaught and its surety to "promptly make payment to all claimants, as hereinafter defined, for all labor and material furnished, used or reasonably required for use in the performance of the subcontract * * *." The bond defines a claimant as one having a direct contract with the principal (Vaught) for labor or material furnished or reasonably required for the use in the performance of the subcontract. The bond provisions afford claimants a direct right of action under the bond. Additionally, the Miller Act authorizes the unpaid creditors of a subcontractor to assert claims directly against the prime contractor and its sureties. 40 U.S.C. § 270b.

Under these circumstances, a fair reading of the withholding clause in Article XXI suggests that the right to withhold contract payments is concomitant with the prime contractor's risk of being liable or required to defend Miller Act claims presented by the subcontractor's unpaid laborers or materialmen. The existence of the payment and performance bond executed by Vaught make that risk virtually nonexistent in this case. Fairly interpreted, the pertinent clauses of Articles XXIII and XXI are intended to protect Rich against double liability, but do not bar a determination of Rich's contractual obligations to its subcontractor. See Premier Roof Co. v. United States, for Use and Benefit of Alpaca Elec. Corp., 315 F.2d 18, 22 (9th Cir. 1963).

On remand, however, the district court should protect prime contractor Rich on its counterclaim against any

possibility of double liability and financial burden resulting from a defense against Miller Act claims asserted by Vaught's subcontract creditors.[3] It is clear that the parties contemplated that Vaught's material and labor payment bond would cover such creditors' claims. By appropriate order, the district court may provide that payments in satisfaction of judgments entered herein may be deposited into the registry of the district court. As an alternative, the district court may stay execution of the judgment until such time as Vaught and its surety, Federal Insurance Company, give appropriate assurances that Rich will be held harmless from any loss or expense from any claims relating to this project asserted by Vaught's creditors.

## IV. CLAIMS FOR EXTRA WORK

We now turn to appellant Rich's contention that the trial court erred in awarding additional compensation to Vaught for services performed in adjusting manhole elevations and in connecting plumbing pipes to certain kitchen equipment which had been installed in the project by another subcontractor. Prime contractor Rich's principal defense to these claims for additional compensation rested upon Vaught's alleged failure to follow procedures specified in the subcontract for making claims thereunder for extra compensation. Article IX of the subcontract specifies that the subcontractor, or second party, shall make no claim for extra or additional work without a written change order, but if the prime contractor should order extra work pursuant to the subcontract, but not extra to the general contract,

> at the option of the first party [prime contractor], the second party will charge an agreed lump sum or at the option of the first party, the cost of

---

3. We note that the trial court, in its memorandum opinion, offered to draft a form of judgment to protect Rich and its sureties from the danger of double liability. The judgment, however, fails to incorporate such protection, although, according to the record on appeal, plaintiff's counsel does not dispute the obligation of the subcontractor and its surety to protect the prime contractor against any burden arising from Vaught's unpaid claims incurred in the performance of the subcontracts.

said work plus ten per cent (10%) for profit, overhead, supervision and tools and which total shall constitute the entire amount due second party for the extra work.

This clause further provided that the subcontractor claiming compensation for any extra work must submit a detailed claim in writing within three days after receiving a direction to do such work, and, further, must do the work under written protest made three days following a notice to proceed. Article IX further provides that failure to make written notice of a claim for extra compensation "within the time and in the manner as herein provided shall constitute a waiver thereof and no recovery therefor can be had."

As an issue apart from construction of these contractual provisions, the parties disagreed whether the projection of the manholes above the ground surface resulted from defective installation by Vaught, inaccurate work plans submitted by Rich or improper surface grading performed by another subcontractor. Subcontractor Vaught maintained that its manhole installations conformed to elevations specified in the plans. Rich ordered Vaught to perform the adjustments on these manholes and Vaught responded by advising the prime contractor that it would comply with the order, but charge all expenses and costs incident to this work to Rich.

The parties also disputed whether Vaught, as the main plumbing subcontractor, undertook contractual responsibility to connect its pipes and drains to kitchen equipment supplied and placed in the project by still another subcontractor. Rich ordered Vaught to make these connections and Vaught again complied with this order, doing so under protest.

The district court determined the merits of both disputes in favor of the subcontractor. It found that Vaught had installed manholes at elevations specified in the plans. It further determined that the contract terms required Vaught to connect plumbing only to fixtures and equipment furnished by the government. The court absolved Vaught from responsibility for not making plumbing connections to kitchen equipment supplied by another subcontractor who had specifically agreed to install such equipment "complete with all trimmings * * * and fittings necessary for proper operation * * *." These determinations, if deemed findings of fact, are not "clearly erroneous", Fed.R.Civ.P. 52(a), or if deemed conclusions of law, cannot be said to be illogical, unsound or improper interpretations of the contractual language in question. See United States for Use of Planet Corp. v. MacDonald Construction Co., 417 F.2d 687 (8th Cir. 1969); Franchi Construction Company v. United States, ex rel. Consolidated Comstock Co., Inc., 392 F.2d 717 (5th Cir. 1968).

We, too, reject appellant Rich's contention that Vaught's alleged failure to comply with all procedures specified in the subcontract before performing any extra work bars recovery. Vaught complied substantially with the relevant provisions of Article IX under the circumstances. It notified Rich that it would not proceed with the work except for additional compensation. When the prime contractor refused to acknowledge the work as extra and refused to issue a change order, Vaught performed under protest. Contract provisions of the kind embodied in Article IX serve to protect the paying party to a construction contract from unknown, unanticipated or excessive charges made for work which a contractor or subcontractor may deem as an extra. These provisions are not, however, intended as a shield barring legitimate claims for extra work performed with the knowledge, consent or acquiescence of the paying party. The notice requirements of such contractual provisions may be waived by the party for whom the work is done. Generally, performing such work at the order of the party sought to be charged justifies an award of additional compensation under circumstances similar to those in the instant case. See Sam Macri & Sons,

Inc. v. United States, for Use of Oaks Const. Co., 313 F.2d 119 (9th Cir. 1963). See generally, Annot., 2 A.L.R.3d 620 (1965).

The trial court, having determined that the connecting of kitchen equipment did not fall within the scope of the mechanical subcontract, properly held Rich liable to pay for this work. See United States v. Smith, 256 U.S. 11, 41 S.Ct. 413, 65 L.Ed. 808 (1921); John A. Johnson & Sons v. United States, to Use of Baltimore Brick Co., 153 F.2d 534 (4th Cir.), cert. denied, 328 U.S. 865, 66 S.Ct. 1372, 90 L.Ed. 1636 (1946); Ross Engineering Co. v. Pace, 153 F.2d 35 (4th Cir. 1946).

## V. PENALTIES AND ATTORNEY'S FEES

■■■■■ The appellants contend that the trial court erred in adding a state-created penalty to a federal award, and that such award was not justified by the evidence. We agree. We find no adequate basis on this record which warrants assessing Rich's sureties with liability for vexatious refusal to pay Vaught's claims under Missouri law. The applicable statute, Mo.Ann.Stat. § 375.420, provides:

> In any action against any insurance company to recover the amount of any loss under a policy of fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance, if it appear from the evidence that such company has vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed ten per cent on the amount of the loss and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

Section 375.420 must be considered together with Mo.Ann.Stat. § 375.296, which states:

> In any action, suit or other proceeding instituted against any insurance company, association or other insurer upon any contract of insurance issued or delivered in this state to a resident of this state, or to a corporation incorporated in or authorized to do business in this state, if the insurer has failed or refused for a period of thirty days after due demand therefor prior to the institution of the action, suit or proceeding, to make payment under and in accordance with the terms and provisions of the contract of insurance, *and it shall appear from the evidence that the refusal was vexatious and without reasonable cause,* the court or jury may, in addition to the amount due under the provisions of the contract of insurance and interest thereon, allow the plaintiff damages for vexatious refusal to pay and attorney's fees as provided in section 375.420. Failure of an insurer to appear and defend any action, suit or other proceeding shall be deemed prima facie evidence that its failure to make payment was vexatious without reasonable cause. (Emphasis added.)

Under existing Missouri law, commercial sureties, such as the defendant sureties in the instant case, constitute insurers subject to the penalty provisions of § 375.420. Camdenton Consol. School Dist. No. 6 of Camden County ex rel. W. H. Powell Lumber Co. v. New York Casualty Co., 340 Mo. 1070, 104 S.W.2d 319 (1937); Goffe v. National Surety Co., 321 Mo. 140, 9 S.W.2d 929 (1928). Section 375.420, however, is penal in nature and must be strictly construed. Western Casualty & Surety Co. v. Southwestern Bell Tel. Co., 396 F.2d 351, 356 (8th Cir. 1968); Duckworth v. United States Fidelity & Guaranty Co., 452 S.W.2d 280, 287 (Mo.App.1970). The sole ground asserted to sustain the penalties rests upon the trial court's finding that the defendant sureties failed to investigate plaintiff's claims because "they had a solvent principal." On this issue, the trial court concluded:

> [T]he failure of the defendant sureties to pay the balances due on the contract was undoubtedly vexatious.

In fact, the defendant sureties admitted they had never investigated plaintiff's claims "because they had a solvent principal".

In order for a plaintiff to recover for vexatious refusal to pay, he must produce evidence which shows that the refusal was wilful and persistent and without reasonable cause as the facts would appear to a reasonable and prudent person before trial. *Duckworth, supra*, 452 S.W.2d 280, 287; Hughes v. Great American Ins. Co., 427 S.W.2d 266, 271 (Mo.App.1968). No evidence of that nature has been produced in the instant case. The mere finding by the trial court here that the sureties failed to investigate the claims and relied upon a solvent principal will not, by itself, justify the assessment of vexatious damages where the record demonstrates that the principal presented a reasonable, albeit unsuccessful, defense. Where there is an open question of fact or law determinative of the insured's liability, the insurer, acting in good faith, may insist on judicial determination of such questions without subjecting itself to penalties for vexatious refusal to pay. Cohen v. Metropolitan Life Ins. Co., 444 S.W.2d 498 (Mo.App.1969). Applying Missouri law to the circumstances in the instant case, we find no justification for the assessment of vexatious damages and reverse the trial court's award on this point.

Having decided that the district court's award of vexatious damages cannot stand, the award of attorney's fees incident to those vexatious damages must, likewise, be reversed. We need not, therefore, determine the question of whether attorney's fees authorized under state law may be awarded to a Miller Act claimant.[4]

## VI. PRE-JUDGMENT INTEREST

▇ Finally, we consider appellants' objection to the allowance of pre-judgment interest as awarded by the trial court. The objection is well taken.

We have, in other cases, recognized that such interest, as authorized under state law, becomes part of the amount "justly due" Miller Act claimants under 40 U.S.C. § 270b. See Aetna Casualty and Surety Company v. United States for Use and Benefit of R. J. Studer & Sons, 365 F.2d 997, 1007 (8th Cir. 1967); National Union Fire Ins. Co. of Pittsburgh, Pa. v. D & L Const. Co., 353 F.2d 169, 177 (8th Cir. 1965), cert. denied, 384 U.S. 941, 86 S.Ct. 1462, 16 L. Ed.2d 539 (1966); D & L Construction Co. v. Triangle Elec. Supply Co., 332 F. 2d 1009, 1013 (8th Cir. 1964).

We consider the applicable Missouri Code provisions in the light of the contract between the parties. Mo.Ann. Stat. § 408.020 authorizes creditors "to receive interest at the rate of six per cent per annum, when no other rate is agreed upon, for all moneys after they become *due and payable,** on written contracts, and on accounts after they become *due** and demand of payment is made * * *."

As we have already noted, in part III of this opinion, the subcontract specifies that "no payment shall be considered to be *due and payable"** to the subcontractor so long as *his own obligations incurred in his performance of the subcontract remain unpaid.* We think this contract provision serves to take this case outside the purview of the Missouri statute governing pre-judgment interest. Accordingly, the trial court erred in its allowance to the plaintiff of pre-judgment interest.

We remand this case to the district court for further proceedings consistent with this opinion.[5]

---

4. For a general discussion of this question, see Annot., 4 A.L.R.Fed. 685 (1970).

* Emphasis added.

5. For reversal in part, appellants shall bear 75 per cent of costs taxable on appeal. Fed.R.App.P. 39(a).