Donald Ray STEWART; Norma L. Stewart, Appellants,

v.

C & C EXCAVATING & CONSTRUCTION CO.; Fireman's Fund Insurance Company, Appellees.

No. 88–2423.

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1989.

Decided June 15, 1989.

Steven J. Bratten, Jefferson City, Mo., for appellants.

Charles H. Stitt, Kansas City, Mo., for appellees.

Before BOWMAN and WOLLMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.

WOLLMAN, Circuit Judge.

Donald Ray Stewart brought this action for breach of a subcontract against C & C Excavating and Construction Company, Inc. (C & C) and C & C's bonding company, Fireman's Fund Insurance Company (Fireman's Fund), pursuant to the Miller Act, 40 U.S.C. §§ 270a–270d. Stewart alleged that C & C breached the contract by failing to compensate him for completed work. C & C counterclaimed, alleging that Stewart breached the contract by abandoning the project. Stewart appeals the district court's[1] judgment entered in favor of C & C. We affirm.

I.

On September 7, 1983, C & C entered into a contract with the Small Business Administration to act as its subcontractor on a project with the United States Department of Agriculture Soil Conservation Service (SCS). Under this contract, C & C agreed to furnish material and labor for the construction of two dam structures, D–9 and D–5, as part of a federal flood prevention project. Through Fireman's Fund, C & C obtained a surety bond insuring payment of all persons supplying labor and material to the project. C & C commenced performance on October 18, 1983.

On June 22, 1984, after Stewart had reviewed the site and site specifications, C & C and Stewart entered into a subcontract for excavation work. The total subcontract price was $261,771.50, and the subcontract

1. The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

provided that payments would be paid in monthly increments based on the proportion of the work completed in the previous month, minus a ten percent retainage payable upon completion. These progress payments were due on the fifteenth day of the month following the month in which the work was performed.

The subcontract authorized C & C to deduct from any amount due to Stewart any sum owed by Stewart to C & C. The subcontract further provided that Stewart would be responsible for the weekly wages of job supervisor Colin Cornetts until D–5 was ready for pipe work. Stewart and C & C agreed that C & C would pay these wages and deduct the amount so expended from the progress payments. Section 4 of the subcontract provided that no addition or reduction in contract price resulting from changes in the work would be binding upon C & C unless agreed to by the parties or approved by SCS.

Stewart had not been approved by SCS as a subcontractor on the project when the parties entered their agreement. They therefore agreed that C & C would pay Stewart's employees while SCS approval was pending. C & C also agreed to rent certain earth-moving equipment to Stewart for use on the project. The parties agreed that C & C would deduct these payroll and rental costs from the progress payments.

Stewart began work on June 25, 1984. He encountered conditions substantially wetter than expected, however, and had to expend extra man and machine hours to perform the work. C & C refused to pay these additional costs unless approved by SCS. On September 7, 1984, the parties met with an SCS representative, who refused to approve these additional costs as part of the contract.[2] Stewart ceased performance of the contract the following day, September 8, 1984. At the time Stewart ceased performance, C & C had made no net progress payments to Stewart. C & C proceeded to perform the work abandoned by Stewart, completing it on September 15, 1985.

Stewart sued C & C and Fireman's Fund, alleging that C & C had breached the subcontract by refusing to pay Stewart, and alleging that this breach forced Stewart to cease performance. C & C counterclaimed, alleging that it was Stewart who breached the contract when he ceased performance.

After a bench trial, the district court found that Stewart was entitled to a gross progress payment of $41,335 on August 15, 1985, for work completed from June 26, 1984, to July 27, 1984. The court also found that as of August 14, 1985, Stewart had incurred equipment charges of $14,455 and payroll expenses of $24,494.22. The court determined that C & C was entitled to deduct these rental charges and payroll expenses from the amounts earned by Stewart and that C & C thus had been obligated to provide Stewart a net progress payment of $2,385.78 on August 15, 1984.[3] Stewart had abandoned the project before the next progress payment became due on September 15, 1984. Thus, the issue before the court was whether C & C's failure to pay the $2,385.78 it owed Stewart amounted to a material breach of the subcontract that justified Stewart's abandonment of the project on September 8, 1984.

The district court concluded that as compared to the total contract price of $261,771.50, the amount owed Stewart was so insignificant that C & C's failure to pay did not constitute a material breach. The court also found that Stewart's primary reason for ceasing work on the subcontract was his knowledge that he would receive no compensation for the additional costs he incurred. The court determined that C & C was not obligated to compensate Stewart for these additional costs. Finally, the court awarded C & C damages of $179,873.57, plus interest of $47,012.74. This amount represented C & C's cost in excess of the subcontract price of completing the

---

2.  C & C subsequently filed a claim with the SCS for differing site conditions. This claim was denied.

3.  C & C sought to establish that it did not owe Stewart any amount on August 15, 1984. The district court disagreed because it concluded that C & C was not entitled to deduct certain claimed payroll expenses.

project, plus the payroll and machine rental costs C & C had incurred while Stewart was working.

## II.

Stewart's first argument for reversal is that the district court erred in concluding that C & C was not in material breach of the subcontract when Stewart abandoned the project. Stewart focuses on the fact that he had earned a total of $129,026 on the subcontract at the time he ceased performance but had never received any progress payments. Stewart argues that he thus was justified in abandoning the project. We do not agree.

The district court's findings support Stewart's contention that he had performed a substantial portion of the subcontract without recovering any net progress payments. Stewart's argument, however, overlooks the fact that he was receiving substantial compensation in the form of C & C's payment of payroll expenses and equipment rental costs. The district court found that C & C had fully complied with the compensation provisions of the subcontract at the time Stewart abandoned the project, with the exception of the $2,385.78 due on August 15, 1984. Stewart does not dispute this determination. The district court, therefore, correctly identified the issue to be whether C & C's failure to pay the $2,385.78 constituted a material breach of the subcontract that justified Stewart's abandonment of the project.

■■■ "[R]ecission of a contract for breach by the other party must relate to a vital provision going to the very substance or root of the agreement, and cannot relate simply to a subordinate or incidental matter." *B & B Equip. Co. v. Bowen,* 581 S.W.2d 80, 85–86 (Mo.App.1979). The failure to make a progress payment may justify the subcontractor in suspending performance. *See Hart and Son Hauling, Inc. v. MacHaffie,* 706 S.W.2d 586, 588 (Mo.App.1986); E. Farnsworth, Contracts § 8.16, at 612 (1982). The amount of the deficiency is of course important in determining whether there was a material breach. *See United States ex rel. Aucoin*

*Elec. Supply Co. v. Safeco Ins. Co. of America,* 555 F.2d 535, 541 (5th Cir.1977). The district court found that the amount C & C failed to pay was such an insignificant portion of the total contract price that its nonpayment did not constitute a material breach. Perhaps as important, the amount C & C had failed to pay was not a substantial portion of the gross progress payment earned for that pay period, $41,335. Furthermore, we note that the district court apparently did not reduce the amount of the gross progress payment by ten percent to account for the retainage provision in the contract. When this amount, more than $4,000, is subtracted from the gross progress payment, the allowable deductions are in excess of the compensation earned for that pay period, and it follows that C & C actually had not failed to pay Stewart any amount due as of September 8, 1984, the day Stewart abandoned the project. The district court thus did not err in concluding that C & C's failure to pay Stewart a net progress payment on August 15, 1985, was not a material breach of the subcontract.

■ Stewart's second argument is that the district court erred in concluding that C & C's refusal to compensate Stewart for additional costs did not justify Stewart's abandonment of the subcontract. The subcontract explicitly provided that no addition or reduction in contract price resulting from changes in the work would be binding upon C & C unless agreed upon in writing by the parties or approved by SCS. Stewart argues that C & C in effect agreed to an addition in the contract price when it adopted Stewart's figures in its claim with SCS for differing site conditions. The district court found, however, that C & C had refused to agree to the additional costs unless approved by SCS. This finding is not clearly erroneous. Adoption of Stewart's figures in seeking SCS approval in no way constituted consent by C & C to be bound by an addition in the contract price, absent SCS approval.

Stewart also relies on *United States ex rel. R.W. Vaught Co. v. F.D. Rich Co.,* 439 F.2d 895 (8th Cir.1971), a case in which a

contractor was held liable for extra work performed by a subcontractor. This reliance is misplaced, however, for in *F.D. Rich*, the contractor specifically ordered the subcontractor to perform work outside the scope of the subcontract. *Id.* at 902–04. The additional work performed by Stewart was within the scope of the subcontract, and, as noted, C & C specifically refused to agree to these additional costs unless consented to by SCS. The district court therefore did not err in concluding that Stewart was not justified in abandoning the subcontract, and that his doing so was a material breach that entitled C & C to damages.

The district court's judgment is affirmed.